C. P. BIGGERSTAFF et al.

v.

ANNA B. VANPELT et al.

*Opinion filed February 17, 1904.*

1. WILLS—*a reversion is subject to devise.* Both at common law and under our Statute of Wills a reversion is recognized as an estate in law which may pass by devise.

2. SAME—*presumption is that testator intended to dispose of his entire estate.* It is presumed a testator intended to dispose of his entire estate by his will, and not to leave any part as intestate property.

3. SAME—*when devise of residue applies to all of testator's remaining estate.* A devise of "all the rest, residue and remainder of my estate, both real and personal," to the testator's children, after a devise of particular property to the testator's wife for life, which was the only property previously disposed of, applies to all of the remaining portion of the testator's estate.

4. SAME—*testator's intention is not to be determined by single clause of will.* Neither the legal effect of a will nor the intention of the testator is to be determined alone from a single clause of the will, but the same must be determined from the entire will.

5. SAME—*word "remainder" need not be given its strict legal meaning.* The word "remainder," which in its technical sense is a remnant of an estate in lands which is expectant upon and a part of the estate created therewith at the same time, may be construed as applying to any kind of a subsequent interest or limitation thereof, and may be given the meaning of "reversion."

6. SAME—*when children take life estate.* Where a will devises a life estate in particular property to the widow in accordance with a prior contract, and provides that the "rest, residue and remainder" shall go to his children, but by a subsequent provision the shares of his daughters in such remainder are limited to a life estate with remainder to their lawful children, the daughters take a life estate in the testator's reversionary interest in such property with remainder in fee to their children.

APPEAL from the Circuit Court of Knox county; the Hon. G. W. THOMPSON, Judge, presiding.

P. H. SANFORD, for appellants:

In construing the will in question the legal meaning of the words "fee" and "remainder," as used therein, should be given them. *Lehndorf* v. *Cope*, 122 Ill. 326.

A fee is the largest possible estate which a man can have, being an absolute estate. It is where lands are given to a man and his heirs absolutely, without any end or limitation being put to the estate. Tiedeman on Real Estate, sec. 36; Bouvier's Law Dic. 776; 4 Kent's Com. (13th ed.) p. 5.

A remainder is a remnant of an estate in land depending upon a particular prior estate created at the same time and by the same instrument, and limited to arise immediately on the determination of that estate, and not in abridgment of it. 4 Kent's Com. 198; Bouvier's Law Dic. 869; 2 Washburn on Real Prop. 585, and cases in note; Tiedeman on Real Estate, sec. 396.

The remainder, and the particular estate upon which it depends, must together constitute the entire estate, *i. e.*, be equivalent to a fee simple estate in the premises. 2 Washburn on Real Estate, 585, 586.

If the future estate does not take effect in possession immediately upon the expiration of the prior particular estate it is not a remainder. Tiedeman on Real Estate, sec. 396.

The rule which controls all others in the interpretation of wills is, that the intention of the testator, to be gathered from the entire will, must govern. *Boyd* v. *Strahan,* 36 Ill. 355; *Akers* v. *Clark,* 184 id. 136.

WILLIAMS, LAWRENCE & WELSH, for appellees:

Two contracts or writings executed at the same time, referring to the same subject matter and where the same parties are interested, should be construed together. *James* v. *Hanks,* 202 Ill. 114.

A life estate can be limited upon or made subject to any number of life estates where the parties are *in esse,* and it is not necessary that this should be done in the same instrument or writing. 2 Powell on Devises, 110, 120; *Glover* v. *Spurlock,* 4 Browne's Ch. 339; *Madison* v. *Larmon,* 170 Ill. 65.

Mr. JUSTICE RICKS delivered the opinion of the court:

Appellees filed their bill for partition in the Knox circuit court, making appellants and others parties defendant, for the partition of certain blocks and parts of blocks in the village of Wataga, in said Knox county. The property described in the bill, designated as the Holyoke property, was the homestead of one Booker Pickerel, who was the grandfather of appellees. Booker Pickerel's wife was Amelia, and on the 30th day of June, 1884, he and his wife entered into an agreement under seal and acknowledged, by which a life estate to her in the real estate in question, together with certain personal property and a certain annuity, was, and was to be, accepted by Amelia Pickerel in full of her dower, homestead, widow's award, and all claims of every character against the estate of Booker Pickerel. Booker Pickerel had a large estate, consisting principally of land, and had five children,—two sons and three daughters. On the same day that the contract was executed between himself and wife he made his will, which, after his death, was duly probated and about which there is no controversy. The second, third and fifth clauses of his will comprise all the parts of the will that in any manner make any disposition of his property. The first clause merely directs the payment of his debts and the fourth appoints the executor. The will contains but five clauses. The clauses referred to are as follows:

"*Second*—Having agreed with my beloved wife, Amelia Pickerel, as to the portion of my estate which she shall take, I do hereby direct my executor hereinafter named, to pay her the sum of $600 per year, to be paid her in equal installments, half-annually, as provided in a certain contract made with her on June 30, 1884; which sum of $600 per annum I hereby direct shall be a charge and lien upon all real estate remaining after payment of debts, so long as she shall live; which provision and other provisions made in said contract, and which I wish

my executor to fully carry out, shall be taken and has been accepted by her in full of and as a substitute for her dower and distributive share in my estate.

"*Third*—All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath to my children, John U. Pickerel, Richard H. Pickerel, Mary Freet, Susan Lawrence and Dana Wright, share and share alike.

"*Fifth*—It is my will that my three daughters above named shall not take their share of the real estate in fee, but as to them my bequest is to them of such undivided share of such remainder for life only, remainder to their lawful children."

The testator died August 1, 1884, and Amelia, his wife, survived him and took the real estate in controversy for her life, under the contract herein above mentioned. Amelia Pickerel died April 12, 1899. Prior to her death the two sons and the three daughters of the testator all joined in a conveyance conveying, by quitclaim deed, to the said Amelia Pickerel all their interest in the said Holyoke property, the property in controversy, and appellants, by *mesne* conveyances from Amelia Pickerel, claim as purchasers and owners in fee of said Holyoke property. Mary Freet, one of the daughters, died November 23, 1898, leaving appellee Anna B. Van-Pelt her only child and heir-at-law. Appellees Maud Steel and Ray Wright are adult children of Mandane Wright, one of testator's daughters, and appellees Daisy Lawrence and Madge Lawrence are the adult children of Susan Lawrence, the third of testator's daughters.

Under a bill alleging the above facts, appellees claim the right to partition the Holyoke property, as owners of three-fifths of the interest of their grandfather, Booker Pickerel, therein, by virtue of the provisions of his will.

Appellants answered the bill, admitting the facts as alleged therein, but denying that by the will appellees took any interest in said real estate. General replica-

tion was filed to the answer and the cause referred to the master. The testimony of but one witness was taken, —George A. Lawrence, a lawyer of Galesburg,—who testified that he prepared the contract between Booker Pickerel and his wife, Amelia, and the will of Booker Pickerel, on June 30, 1884. The contract was prepared, executed and delivered before the will. This, together with the documentary evidence, was all the evidence heard by the master, who found and reported: "It is evident that the fifth clause was inserted as a modification of the third clause. By the third clause, standing alone, the five children would take this Wataga property subject to the life estate of Mrs. Pickerel therein. They did not take the property in fee. By the third clause not modified the five children would have taken the balance of his real estate alike in fee, but by the fifth clause he says, 'It is my will that my daughters above named shall not take their share of the real estate in fee,'—that is, in so far as my daughters would take real estate in fee under the third clause, I direct that they shall take only a life estate in such real estate, remainder to their lawful children. The legal definition of a fee is: 'The largest possible estate which a man can have, being an absolute estate. It is where lands are given to a man and his heirs absolutely, without any end or limitation put to the estate.' By the third clause Pickerel gave these premises to the five children subject to the life estate of the widow. Did he give it to them in fee? We think not. He did not have it to give, as he had already given a life estate, and could only give them the premises subject to the life estate, as he had only that to give,—a reversionary interest in the premises. Complainants claim only as remainder-men. By the will no remainder was created as to these premises. A remainder is defined to be 'the remnant of an estate in land depending upon a particular prior estate created at the same time and by the same instrument, and limited to arise immediately on

determination of that estate and not independent of it.'
In construing this will we think the legal import and
meaning of the words *fee* and *remainder* should be given
to them. The remainder, and the particular estates up-
on which it depends, must together constitute the entire
estate,—that is, be equivalent to a fee simple estate in
the premises. As to these premises this could not be un-
der this will, as the testator had by another instrument
and at a different time created a life estate in the prem-
ises to his wife."

The master, after expressing these views, held that
as to the property in question the two sons and three
daughters took alike, and that appellees had no interest
in the property and that their bill should be dismissed
for want of equity. Objections were filed to the report
of the master and by him overruled, and exceptions filed
before the chancellor and by him sustained, except as
to point 5, which was to the holding of the master that
technical definitions should be applied to words used in
the will, and that in construing it the technical mean-
ing, rather than the plain meaning and intent of the tes-
tator, should be given effect. The chancellor granted
the relief as prayed and appellants prosecute this ap-
peal, and urge that the court erred in sustaining com-
plainants' exceptions to the finding of the master and in
granting the relief.

The whole argument of appellants is predicated upon
the contention that as the testator had, by the contract
between himself and his wife, carved out a life estate
from the property in question before the making of the
will, therefore he had but the reversionary interest, which
alone could pass by his devise, and that such interest
was less than a fee, and that, inasmuch as the fifth clause,
which attempted to modify the grant to the devisees in
the third clause by the use of the following language in
the fifth clause, "it is my will that my three daughters,
above named, shall not take their share of the real es-

tate in fee," referred only to such portion of the estate as could by the devise under the third clause have passed in fee to the daughters, and that as the property in question could not pass in fee to the daughters under that devise, therefore it was not affected by the fifth clause, and that the whole reversionary interest, whatever it was, being less than a fee, passed and vested absolutely in the sons and daughters. Appellants further contend, that as by the ·express terms of the fifth clause the appellees take a *remainder*, and as there was other real estate than that in question which passed by the third clause of the will to the mothers of appellees, and in which appellees, by the fifth clause, did take a remainder, the word "remainder" should be given its strict legal definition and effect, and not be held to mean or include a reversion, and that by so doing the property in question would not pass.

This position is grounded upon the technical definition of the words "fee" and "remainder," it being said that a fee "is the largest possible estate which a man can have, being an absolute estate," and that a remainder is "the remnant of an estate in land depending upon a particular prior estate created at the same time and by the *same instrument*, and limited to arise immediately on determination of that estate, and not in abridgment of it," citing 2 Bouvier's Law Dic. 869; 2 Washburn on Real Prop. 585; 4 Kent's Com. 198; Tiedeman on Real Prop. sec. 396. In support of their position appellants invoke the rule of construction applicable to wills, that each word and term used must be given effect according to its legal import.

If a reversion could not be the subject of a devise the position of appellants would be unassailable. Both at the common law and by the first section of our statute relating to wills a reversion is recognized as an estate or interest in land that may pass by devise. When a will is established, the presumption is that the testator in-

tended to dispose of his entire estate, and not to leave any part of it as intestate property. By the second clause of the will in question the testator declares that he has made an agreement with his wife, Amelia, as to the portion of his estate she shall take, and directs that she be paid $600 annually, in equal semi-annual payments, and makes such annuity a charge on his real estate. By the agreement referred to in the will he gives her the Holyoke property for life and also the household goods, and agrees further that his executors and administrators will assume and pay to his wife an annuity of $600 in half-yearly payments so long as she shall live. By the third clause of the will the testator grants to his five children, two sons and three daughters, naming them, "all the rest, residue and remainder of my estate, both real and personal, * * * share and share alike." As no part of his estate had otherwise been disposed of, except by the agreement with his wife and the second clause of his will, which disposition was made solely with reference to the portion that should be taken by his wife, it is entirely apparent that by the third clause the testator intended to give to his five children named, all the remaining portion of his estate.

But it is said, that as the third clause only disposed of the estate in the same manner that the law of descent would have done without the will, therefore that clause is void, and in support of this contention is cited *Akers* v. *Clark*, 184 Ill. 136, where it is said (p. 137): "A devise giving precisely the same estate and interest in property as the devisee would take by descent if the devise had not been made is void, for the reason that a title by descent is regarded as a worthier or better title than by devise or purchase." This rule would be applicable and controlling were it not for the fifth clause of the will. Neither the legal effect nor the intention of the testator is alone determined by a single clause of the will, and both must be determined from the entire will, giving

each clause and each word thereof, if the same can be done, validity. When the fifth clause is read in connection with the third clause and effect given to it, it appears that by the devise in question the testator did not give to his three daughters the same estate in any of his real estate that they would have taken in case of intestacy, but that the estate to each of them was limited to that of a life estate; and whilst it is true that the word "remainder," in a strict legal sense, as spoken of in the books when referring to estates, has a somewhat restricted meaning, it is also true that it has a broader meaning as commonly and generally understood. As applied to estates, and under the restricted meaning, the definition of the word "remainder" is, "a remnant of an estate in lands and tenements expectant upon and part of the estate created together with the same at one time;" and it would seem the greater weight of authority is, that to be strictly a remainder it must be created not only at the same time, but by the same instrument as the particular estate.

"The term 'remainder' is sometimes used in a lax sense to define any kind of subsequent interest, or the limitation thereof. But a limitation of a remainder, strictly so called, is a clause creating or transferring an estate or interest in lands or tenements which is limited, either directly or indirectly, to take effect in possession or in enjoyment, or in both, subject only to any term of years or contingent interest that may intervene immediately after the regular expiration of a particular estate or freehold previously created together with it by the same instrument out of the same subject of property." (Smith on Executory Interests, sec. 159.) "An estate, then, in remainder may be defined to be an estate limited to take effect and be enjoyed after another estate is determined." (2 Blackstone's Com. 164.)

In the case before us the estate granted to the wife was one for life, and the estate remaining in the testa-

tor and susceptible of his disposition was just as great and just as certain as though the testator had, by the will, granted to his wife a life estate and to each of his daughters a life estate in remainder, with remainder in fee to his grandchildren, the children of his respective daughters. The words "revert," "reversion" and "remainder" are sometimes interchangeably used, as was the case in *Dalrymple* v. *Leach,* 192 Ill. 51, where the testator gave to his wife two-thirds of his property, and by subsequent clause provided, "if at my wife's death there is any property then in her possession or control, I desire one-half the same shall revert to my nephew, Frederick Dalrymple." (See, also, 24 Am. & Eng. Ency. of Law—2d ed.— 420.) And in the case of *Akers* v. *Clark, supra,* which was a devise of a reversion in land, Mr. Justice PHILLIPS, in speaking of the devise, said (p. 138): "The *remainder,* after the expiration of her life estate, under the law as well as under the deed, reverted to the grantor or his heirs. He being a reversioner first in order of time, might dispose of the fee absolutely by will or by deed." As in the case at bar an estate of the same extent would have passed by the devise whether it had been termed a "reversion" or a "remainder;" and as we think there can be no doubt as to the intention of the testator, taking the provisions and language of the will as a whole, and that his intention was that the appellees should ultimately have the fee of the reversionary interest in the Holyoke property, we would not feel warranted in giving the word "remainder" the restricted meaning contended for, and thus defeat the plain provision of the will.

We think the conclusion of the chancellor was the correct one, and the decree of the circuit court is affirmed.

*Decree affirmed.*