Florence Marion Lord, Executrix of the Estate of Charles L. Lindley, Deceased, Complainant and Appellant, v. Inin Louise Andrus et al., Defendants and Appellees.

Gen. No. 35,431.

396

Opinion filed May 17, 1932.

Tenney, Harding, Sherman & Rogers, Paul A. Tschirgi and James E. Babbitt, for appellant.

Fisher, Boyden, Bell, Boyd & Marshall, for appellees.

Mr. Presiding Justice Gridley delivered the opinion of the court.

By this appeal it is sought to reverse a decree of the superior court of Cook county, entered May 16, 1931,

*nunc pro tunc* as of March 26, 1931. After reciting that the cause came on to be heard upon the bill of Charles L. Lindley, the answer of defendants, Inin Louise Andrus and Philip L. Marshall, and the answer and disclaimer of defendant, Susan C. Whitney, the court in the decree made findings as follows:

That by the true construction of the last will of Susan C. Knight, deceased, Laura Marshall Lindley "acquired no interest in the real estate described in the bill which she could dispose of by will"; that in and by said will Mrs. Knight "directed that upon the death of her husband all her estate, not otherwise disposed of, be divided among all her children, share and share alike, with full rights of representation in favor of the descendants of any deceased child"; that Laura Marshall Lindley died after the death of Mrs. Knight, "leaving no descendants and never having had any descendants"; that her interest, if any, in the estate of her mother, Mrs. Knight, "terminated upon her death and no interest in said real estate passed under the last,will of Laura Marshall Lindley"; that Charles L. Lindley, therefore, "acquired no interest in any of the real estate devised by the last will of Susan C. Knight, and he has not and never did have any interest in the fund of $7,750, mentioned in the bill, and is not entitled to be paid out of said fund the sum of $2,518.61, or any other sum"; and that the entire fund of $7,750 "belongs and should be paid to the defendants, Inin Louise Andrus and Philip L. Marshall, share and share alike."

And the court ordered and adjudged that said sum of $7,750, "which has been retained subject to control of counsel for the respective parties, be paid over and delivered to said Inin Louise Andrus and Philip L. Marshall in equal shares, and that the costs of this suit be paid by complainant."

On the day the decree was entered Charles L. Lindley prayed and was allowed an appeal to this court.

Subsequently, and before the time allowed for the filing of an appeal bond had expired, his death was suggested, and by stipulation it was ordered that the executrix of his estate, Florence Marion Lord, be substituted as complainant and that she be allowed to appeal, etc. Her appeal bond was approved and filed, and her appeal perfected in this court,—all in apt time.

In complainant's bill, filed November 25, 1930, he alleged that Susan C. Knight (hereinafter called the testatrix), a resident of Chicago, died on February 7, 1893, leaving a last will (copy attached); that she was first married to James M. Marshall and they had six children,—two of whom died unmarried and prior to the death of said testatrix; that three of said children are still living, viz., Inin Louise Andrus, Susan C. Whitney and Philip L. Marshall; that Laura Marshall Lindley, when said testatrix died, was the wife of one Albert F. Lunt, and that Laura died in 1917; that the testatrix and James M. Marshall did not adopt any children; that after the death of James M. Marshall the testatrix married John B. Knight, who was her husband when she died; that she and John B. Knight had no children and adopted none; that the will of said testatrix was probated in the probate court of Cook county on July 7, 1893, and her estate thereafter duly settled; that John B. Knight, as trustee under said will, took possession of the estate given and devised to him as trustee by the terms of said will, including certain improved property on South State street, Chicago (hereinafter called the State street property), and retained possession of said estate, or of so much thereof as he did not convey or otherwise dispose of, until the time of his death on January 30, 1927; that after the death of said testatrix her daughter, Laura, obtained a divorce from her first husband (Lunt), for his fault, and married Charles L. Lindley,

who was her husband when she (Laura) died in 1917, leaving a last will (copy also attached), which was duly probated in Ocean county, New Jersey, on March 22, 1917; that Laura had no children by either of her marriages and did not adopt any children; and that subject to divers incumbrances placed thereon by John B. Knight, he as trustee, until his death, retained title to said State street property, which is expressly mentioned in paragraph VI in the will of said testatrix.

Complainant further alleged that John B. Knight executed various trust deeds purporting to incumber said State street property as security for notes executed by him as trustee; that the last of said incumbrances was a trust deed to one Frank H. Jones, as trustee, dated April 9, 1914, recorded April 16, 1914, purporting to secure the principal note of said Knight, as trustee, for the sum of $137,500, dated April 9, 1914, payable on or before five years after date, with interest at five per cent per annum; that substantially all of the proceeds of the loan evidenced by said note were used and applied by Knight to pay and discharge certain incumbrances which, as trustee under said will, he had theretofore placed upon said State street property and upon other real estate in Chicago acquired and held by him as trustee under the will of said testatrix; that the principal of said note of April 9, 1914, remained unpaid at the time of his death (January 30, 1927); that on July 1, 1927, one Mark Oliver, claiming to be the legal holder and owner of said note, filed a bill in the superior court of Cook county to foreclose the Jones trust deed against Mrs. Andrus, Philip Marshall, Susan C. Whitney and complainant; that in said suit Mrs. Andrus and Philip Marshall filed a cross-bill, disputing the validity of the trust deed and praying for a partition of the State street property, but the controversy afterward was settled by agreement of all parties and the case dismissed; that pursuant to the

terms of the settlement, and as a part thereof, Mrs. Andrus, Philip Marshall, Mrs. Whitney and complainant conveyed and quitclaimed to the nominee of Mark Oliver all their interest in said State street property; and that said Oliver paid to them, or for their benefit, the net sum of $19,540.52.

Complainant further alleged that said Susan C. Whitney, by deed dated October 31, 1924, and duly recorded, conveyed to Mrs. Andrus all her interest in the State street property and in the estate of said testatrix and she (Mrs. Whitney) does not now claim, nor does she now have, any interest in said money so paid by Mark Oliver as aforesaid; that the only persons interested or claiming any interest in said sum of $19,540.52, are Mrs. Andrus, Philip Marshall and complainant; that complainant claims that, ''by the true construction of the last will of said testatrix'' (Mrs. Knight), he is entitled, as sole devisee and legatee of his wife (Laura Marshall Lindley), to that part of the proceeds of such settlement which she (Laura) would be entitled to receive if living, whereas Mrs. Andrus and Philip Marshall claim that complainant is not entitled to any part of the proceeds of said settlement; that by agreement the sum of $11,790.52, from the proceeds of said settlement, has been paid over to Mrs. Andrus and Philip Marshall, and the balance of said proceeds ($7,750) ''has been retained subject to the control of counsel for the respective parties as security for the payment of any part of said proceeds to which the court may adjudge complainant to be entitled.''

Complainant further alleged that ''the present value of the combined life estates of Inin Louise Andrus and Philip L. Marshall in said sum of $19,540.52 is $9,466.08, and complainant is entitled to be paid $2,518.61 from the aforesaid fund of $7,750.''

The prayer of complainant's bill, after praying that defendants answer the same but not under oath, etc., is that the court adjudge that $2,518.61, of said sum of $19,540.52, "would belong to Laura Marshall Lindley were she now living"; that the court construe said last will of the testatrix (Mrs. Knight) and adjudge that "complainant receive that part of said sum of $19,540.52 to which Laura Marshall Lindley would have been entitled to if now living"; that the reasonable legal and other expenses of complainant be paid to him out of said fund of $7,750; and that he may have such other and further relief as equity may require, etc.

By the first clause of said will of Mrs. Knight, admitted to probate on July 7, 1893, certain real estate in the City of West Superior, Wisconsin, is devised to her sister, Ophelia K. Larson. Other clauses are as follows:

"II. I give and devise all my other estate of every kind and nature whatsoever to my husband, John B. Knight, to have and to hold to him and his assigns and successors in trust, in trust however, to keep, manage, invest and reinvest and care for the same and the rents, improvements, additions, income and profit thereof during his natural lifetime.

"III. And it is further my will that my trustee shall have the right to retain so much of *my estate or its income* as in his judgment shall be reasonably required for his support during his life and that of my children and other descendants, if any; having in view the good policy of keeping our family together so far as practicable during the term of my said trust; such support of my said husband to be in lieu of dower in my estate.

"IV. And it is further my will that for the purpose of carrying out the trusts hereof my said trustee have full power and right to sell and convey by deed of

absolute conveyance or mortgage, exchange, lease or otherwise any of my said estate, in fee or by way of granting lesser estates therein, as effectually to every intent and purpose as I might do in person if alive; meaning hereby to confer upon him full discretion to change from time to time the form thereof, to make conversion of any of my said estate and proceeds thereof without obligation upon any purchaser or other person dealing with him to see to the application of any money or proceeds thereof.

"VI. It is further my will that upon the decease of my said husband my daughter Inin Louise have two-thirds, and my son Philip L. Marshall have one-third of all my present or future right or interest in the North one half of lot twenty-one block one hundred and thirty-eight (138) in the School Section addition to Chicago, to hold *for their lives* respectively in the proportions aforesaid, and I hereby give them power to grant a lease or leases thereof for a term or terms not exceeding in the aggregate ninety-nine (99) years; and in case such power be exercised by them the said Inin Louise and Philip L. are to have and hold, the former two-thirds and the latter one-third, of the net ground and other rents thereof for their respective natural lives. In making this especial provision for my said daughter Inin Louise and my said son Philip L., I have remembered the worldly condition of my other living children, both of whom are now married and well provided for.

"VII. It is further my will that at the death of my said husband all my estate not otherwise herein disposed of be divided among all my children, share and share alike, with full rights of representation in favor of the descendants of any deceased child."

By the will of Laura Marshall Lindley, admitted to probate on March 22, 1917, after directing the payment

of all her just debts and funeral expenses, it is provided in the second clause, as follows:

"*Second:* All the rest, residue and remainder of my property, real and personal, I give, devise and bequeath absolutely to my husband, Charles L. Lindley, to have and to hold the same to him and his heirs forever."

In the answer of Mrs. Andrus and Philip Marshall to complainant's bill they admitted "the matters of fact set out in said bill," but denied that "by the true construction" of the will of Mrs. Knight, or the will of Laura Marshall Lindley, complainant acquired any interest in the estate of Mrs. Knight; denied that complainant has any interest in said fund of $7,750; and alleged that on the contrary the fund "belongs to them exclusively." They joined in complainant's prayer that the court construe the will of Mrs. Knight and prayed that the court adjudge that "they solely are entitled to said fund." In the answer of Mrs. Whitney she stated that "she has heretofore conveyed" to her codefendant, Mrs. Andrus, "all interests in the estate of her mother, Susan C. Knight," and that she does not now have any interest in any of the property of the estate, or in the subject matter of this litigation.

Counsel for complainant, in urging a reversal of the decree, contend that under the facts alleged in the bill and admitted in the answer of Mrs. Andrus and Philip Marshall, the sole question is whether Laura Lindley's interest under the provisions of Mrs. Knight's will was a vested rather than a contingent remainder, so as to pass to her devisee (Charles L. Lindley), and entitle him to receive, the present admitted value of that remainder in the State street property received from the proceeds of its sale. And they argue that such interest should under the authorities be construed to be a vested remainder, entitling complainant to receive said present admitted value of said remainder.

We think it clear that if Laura Lindley's interest under said will was a vested remainder she could devise it to her husband, Charles L. Lindley. (Cahill's Ill. St. 1931, ch. 148, ¶ 1, p. 2761; 40 Cyc. p. 1048; *Biggerstaff v. Van Pelt,* 207 Ill. 611, 617; *Wimple v. Fonda,* 2 Johns. (N. Y.) 288; *Davis v. Bawcum,* 10 Heisk. (Tenn.) 406.) Counsel for defendants, Mrs. Andrus and Philip Marshall, argue in substance that the question is not whether Laura Lindley's interest under Mrs. Knight's will was vested or not; that the question is a "narrower" one of the intention of the testatrix; and that the "entire scheme" of the will discloses that Mrs. Knight "did not intend her own children, who were not alive at the date of distribution, to take an interest in her estate." It is to be noticed that by paragraph VII of the will Mrs. Knight directed that at the death of her husband (who had been given a life estate in trust as stated in paragraphs II and III), all her estate "not otherwise herein disposed of be divided among all my children, share and share alike, with full rights of representation in favor of the descendants of any deceased child"; that by paragraph III Mrs. Knight directed that the trustee (her husband) "shall have the right to *retain* so much of *my estate or its income* as in his judgment shall be reasonably required for his support during his life and that of my children and other descendants, if any," etc.; and that by paragraph VI Mrs. Knight directed that upon her husband's death, two of her children, Mrs. Andrus and Philip Marshall, have a *life estate* in certain named proportions in said State street property, etc. And counsel for defendants state in their brief in substance that the "following features" of the will "show that Mrs. Knight did not intend her own children, who were not alive at the date of distribution, to take an interest in her estate," viz.: (a) According to the language of paragraph VII, "the gift is contained

only in the direction to divide among a class," and "there is a gift over to grandchildren after the gift to the children in case a child should die before the period of distribution;" (b) the power given to John C. Knight, the husband, "to *invade* the principal and the nature and express purpose of the trust were for the sole benefit of the testatrix' own family and their descendants and not for outsiders"; and (c) "the distribution is to take place at the end of the first life estate and prior to two other joint life estates." And counsel conclude that "these features, taken together, show that the distribution was postponed, not simply to let in a preceding estate, but because Susan C. Knight planned her will so that her children should not take unless living at the date of distribution."

We cannot agree with counsels' conclusion or with their argument that the main question here involved is not whether Laura Lindley's interest under Mrs. Knight's will was a vested remainder or not. On the contrary we think that the determination of that question is decisive of the present controversy. And, after considering the provisions of Mrs. Knight's will and reviewing numerous authorities in this State wherein similar wills are construed, we are of the opinion that Laura Lindley's interest in Mrs. Knight's will was a vested remainder.

While it is true that a court, in construing a will, should ascertain the intention of the testator from the provisions of the will and give that intention effect unless prevented by some settled rule of law, and while it is also true that the construction adopted under similar wills in adjudicated cases is not necessarily controlling (as the intention of the testator is the thing sought), yet, as said in *Dustin v. Brown,* 297 Ill. 499, 508, "unless there be in the language something to suggest a different construction that *generally* adopted should be adhered to." In the *Dustin* case it is also

said (p. 508): "It has long been a fixed rule to be observed in the construction of wills by the courts of this country and England, that the estate granted under a will should be deemed to vest upon the death of the testator unless *very clear words* were found in the will showing the manifest intention of the testator that the estate granted should not vest except upon the happening of a certain contingency. . . . It is likewise the rule that if the distribution of the estate devised is not deferred for some reason *personal to the devisee* but merely because the testator desires to appropriate the subject matter of the devise to the use and benefit of another for and during the natural life of the latter, the vesting of the gift by remainder will not be postponed but will occur at once, the right of enjoyment only being deferred." (Citing, among others, the leading case of *Knight v. Pottgieser,* 176 Ill. 368.) In that case it appears that by the will of Pottgieser, Sr., he devised a life estate in certain real estate to his wife, Barbara, "to have and enjoy the rents, profits and income derived therefrom to and for her own exclusive use and benefit as long as she lives, and upon and at her death the same to go to and be divided amongst my children and their descendants in equal shares, the descendant or descendants of a deceased child to take the parent's share in equal proportions." It will be noticed that the language of this clause, relative to the remainder interest, is of the same import as the language in paragraph VII of Mrs. Knight's will now in question. It appears from the opinion in the *Pottgieser* case (p. 372), that Giesbert Pottgieser, Sr., the testator, left him surviving a son, Giesbert, Jr., his widow, Barbara, and three daughters. Giesbert, Jr., intermarried and subsequently died intestate, leaving him surviving Martha, his widow, Barbara, his mother (widow of Giesbert, Sr.), and three sisters, but neither child, children nor

descendants of a child; that Martha, on the theory that her husband, Giesbert, Jr., was seized of a vested remainder in the premises and that she inherited an undivided one-half thereof, filed a bill for partition of the premises, subject to the life estate of Barbara; that pending the hearing of the cause Barbara died, and the court construed the remainder created by the will to be vested,—not contingent,—and entered a decree for partition according to the prayer of the bill, except that as the life estate had been terminated the interests of the parties were declared accordingly; and that the sisters of Giesbert, Jr., (daughters of the testator) appealed from the decree. It will also be noticed that the facts in the *Pottgieser* case are quite similar to those in the present case. One of the contentions of the appellants in the *Pottgieser* case was that "the remainders created by the will were contingent, and did not vest until after the death of the widow, Barbara, and as said Giesbert, Jr., did not survive his mother he was never seized of title or interest in the premises, and hence the petitioner (Martha, widow of Giesbert, Jr.) inherited no interest from him." And it was argued that "there is no devise of the remainders except to a class of persons not named but described; that the devise is only to be found in directions given to divide the premises at and after the death of the life tenant; and that, consequently, only such persons are entitled to take as are, at the time fixed for the division, of the class described in the will, —that is, such a devise vests in the survivors of the class." Our Supreme Court disagreed with the contention and argument and affirmed the decree. In the course of the opinion (pp. 373, 374) the court made the following holdings, which we think are applicable to the present case:

"A devise of a life estate with remainder over to a class of persons not named but described, is not to be

regarded as manifesting it was the intention of the testator such persons only should take in remainder as could answer the description at the termination of the life estate. On the contrary, in the absence of other indications of testamentary intent the settled rule is, it will be deemed to have been the will of the testator that the remainders created by such a devise should vest in interest and title, at once upon his death, in the persons then comprising the class described, and that the right of possession only should be postponed until the life estate had become extinguished. Under such a devise all persons who, at the time of the death of the testator, would take if prior estate was removed are seized of a vested interest to take at once upon the determination of such prior estate. . . .

"We find nothing in the will under consideration indicating that any cause or reason *personal to the remainder-men* induced the testator to postpone the right of such remainder-men to possess and enjoy the estate. He desired the income and benefit of the property should be enjoyed by his widow as long as she should live, and for that reason invested her with the exclusive right of possession during her lifetime and deferred the right of the remainder-men to enter into possession accordingly. Futurity was not annexed to the right of the remainder-men to possession, but only to the time when such right may be exercised. The postponement had reference to the situation or convenience of the estate, possession of the premises at once upon the death of the testator being denied the remainder-men solely because the testator desired his widow should enjoy the use and benefit thereof so long as she should live. An immediate right of present enjoyment is not essential to a vested remainder. It is sufficient if there is present a fixed right of future enjoyment."

The *Pottgieser* case has been cited by our Supreme Court with approval in many cases in which wills somewhat similar to the one here involved were construed, among which cases may be mentioned *Dee v. Dee,* 212 Ill. 338, *Carter v. Carter,* 234 Ill. 507, *Thomas v. Thomas,* 247 Ill. 543, and *Fay v. Fay,* 336 Ill. 299. In the *Dee* case (pp. 353, 354) it is said: "Here the only purpose, so far as we can determine, in postponing the division of the estate, was that the widow might enjoy it during her lifetime or widowhood. The time of division was not postponed for or on account of anything personal to the legatees, as, for example, until the youngest arrived at the age of twenty-one years, or until some one of the children desired to engage in business. It is manifest, therefore, that the remainder taken by the children of the deceased vested at his death." In the *Thomas* case (p. 546) it is said: "Where the enjoyment of the estate or the period of distribution is postponed for the convenience of the funds of the estate and not for reasons personal to the devisees, the remainder is vested. . . . The possibility of after-born children coming in to the class does not interfere with the operation of this rule. In such case the estate vested will open up to let in subsequently born children." In the *Fay* case (p. 304) it is said: "The law favors the vesting of estates at the earliest possible moment, and estates devised will vest in interest at the death of the testator unless some later time for their vesting is clearly expressed by the words of the will or appears by necessary implication." In the *Carter* case (234 Ill. 507), it is said (p. 511):

"There is no language in the will indicating an intention that the devise to the children should be contingent upon their surviving their mother. A contingent remainder is one limited to take effect either to an uncertain person or upon an uncertain event. It is limited by the instrument creating it, either to a person

not yet ascertained or not in being, or so as to depend upon an event which may never happen. It is an estate which is not ready to come into possession at any moment when the prior estate may end. On the other hand, if the estate is at any time ready to come into possession provided the prior estate should end, then it is a vested estate. Whenever the person who is to succeed to the estate in remainder is in being and is ascertained and the event which by express limitation will terminate the precedent estate is certain to happen, the remainder is vested. The uncertainty which distinguishes the contingent from the vested remainder is not the uncertainty whether the remainder-man will live to enjoy the estate, but whether he will ever have the right to such enjoyment.''

Defendants' counsel state in their brief that in the case of *Warrington v. Chester*, 294 Ill. 524, our Supreme Court ''practically reversed'' certain holdings in the *Pottgieser* case. We cannot agree with the statement. The court said in the *Warrington* case, speaking of the *Pottgieser* case, at page 528: ''It was properly decided that the remainder was vested and that it was not terminated by the death of the remainder-man without descendants. The language that there is nothing in the bill upon which the supposition may be reasonably based that the testator intended to qualify or limit the character of the interest to be taken by those entitled to be vested with the remainder *was correct* as applied to the case then in litigation. It was not accurate as a general statement in regard to the devise. There was a limitation in the remainder to the children by the words, 'the descendant or descendants of a deceased child to take the parent's share in equal proportions.' If the deceased remainder-man *had left a child* the case would have been like this.'' In the instant case Laura Lindley, like the deceased remainder-man, Giesbert Pottgieser, Jr., in the *Pottgieser* case, died without leaving any children.

Defendants' counsel cite certain Illinois cases which they claim disclose that the holdings in the *Pottgieser* case have not always been followed. From a reading of these cases, however, it appears that their facts or the words in the particular wills are materially different from those in the *Pottgieser* case and in the present case. For instance, in *Brechbeller v. Wilson,* 228 Ill. 502, it is decided in substance that a *clear* intention of the testator, as gathered from the entire will, not to vest a remainder until the time of distribution, must be carried out by the courts, notwithstanding the rule that the law favors the vesting of estates. But in the *Brechbeller* will it was provided that "upon the death of my said wife," . . . "the said trust estate shall cease," and all of the residue and remainder of the estate, "then remaining in the hands of said trustees," shall be divided equally among such of the testator's four children (naming them) *"as may survive my said wife,"* etc.

And we cannot agree with the argument of defendants' counsel, viz., that the authority given to John B. Knight (the life tenant and trustee) in paragraph III of the present will to "invade the principal" of the testatrix' estate, is indicative of her intention that Laura Lindley's interest in said estate was to vest only in case she survived John B. Knight. It seems to us that the grant of such authority indicates, only the more clearly, that the division of the residue (if any) at his death was postponed so that *he* during his lifetime might the more fully enjoy the estate, and that such postponement was not made for reasons "personal to the devisees," including Laura Lindley. In *Hawkins v. Bohling,* 168 Ill. 214, it was decided in substance that a devise of a life estate in trust, with remainder to a person in being, passes a vested interest to the remainder-man, although the trustee is given power to sell the trust property if necessary, and apply the proceeds to the support of the life tenant.

Nor can we agree with counsels' further argument, viz., that the provision for the life estates in Mrs. Andrus and Philip Marshall in the State street property, discloses an intention to postpone the *vesting* of Laura Lindley's remainder interest in the entire estate. (See *McLean v. Stanley* [Kan.], 5 Pac. [2d] 839, 842.)

We conclude that the court erred in entering the decree, first above mentioned, and that it should be reversed and that the cause be remanded with directions to enter a new decree in favor of the present complainant, Florence Marion Lord, as executrix, etc., and in substantial accord with the prayer of the bill of Charles L. Lindley, who departed this life since the decree was entered. Inasmuch as it appears from the bill, admitted by defendant's answer, that the sum in dispute (received with other sums from the proceeds of the sale of the State street property) is $2,518.61, and is available from a particular fund of $7,750, the superior court is directed to provide in said new decree for the payment from said fund to the present complainant of said sum of $2,518,61, together with interest thereon at the legal rate from March 26, 1931, and that all costs of this suit be paid by the defendants, Inin Louise Andrus and Philip L. Marshall.

*Reversed and remanded with directions.*

KERNER and SCANLAN, JJ., concur.