INEZ DALRYMPLE *et al.*

*v.*

REBECCA LEACH *et al.*

*Opinion filed October 24, 1901.*

1. WILLS—*when trust is not created by precatory words.* A will devising to the testator's wife "two-thirds of all my property, real and personal," and providing in a subsequent clause that "if at my wife's death there is any property then in her possession or control, I desire one-half the same shall revert to my nephew," passes two-thirds of the estate to the wife absolutely, and no trust is created in favor of the nephew by the precatory words used.

2. SAME—*what is necessary to create a trust by precatory words.* In order that words of recommendation, request or entreaty to a devisee or legatee may make him a trustee for the party in whose favor the request is made, it is essential that the testator clearly point out both the subject matter and the objects of the trust.

APPEAL from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

H. M. MATTHEWS, for appellants.

WILLIAM C. SCHAEFER, and CLARK VARNUM, for appellees.

Mr. CHIEF JUSTICE WILKIN· delivered the opinion of the court:

Russell C. Peck died testate January 24, 1880, leaving Isabella, his widow, but no children. Frederick Dalrymple, a nephew, survived him. By his will he provided, first, that his executors should pay all his debts and funeral expenses; second, after the payment of such funeral expenses and debts "I give, devise and bequeath to my beloved wife two-thirds of all my property, real and personal, and of every character whatsoever; third, I give, devise and bequeath to my sister-in-law, Rebecca Leach, one-third of all my property, real and personal; fourth, if at my wife's death there is any property then in her possession or control, I desire one-half the same shall revert to my nephew, Frederick Dalrymple." The will was duly probated in the county court of Cook county, and the widow, Isabella Peck, appointed executrix, without bond. The testator died seized of two hundred and sixty acres of land near the village of LaGrange, in Cook county; also some real estate in Hinsdale, DuPage county, and some in Riverside, in Chicago,—all of which was unencumbered. Isabella Peck died intestate September 20, 1890, having, previous to her death, conveyed away her two-thirds interest in all of said lands, except a part of a block in an addition to Hinsdale, and leaving Rebecca Leach and Catharine Bannister, her sisters, Joseph Leach and Robert Leach, her brothers, and a nephew, John A. Robb, and Maria E. Leitch, her niece, her only heirs-at-law. The testator seems to have left little or no personal estate. Frederick Dalrymple, the nephew named in the fourth clause of the will, died intestate October 4, 1896, leaving Inez, his daughter, and Mary E., his widow. The

widow, in her own right·and as next friend of the daugh-
ter, Inez, filed this bill in the superior court of Cook
county against the heirs and grantees of Isabella Peck,
seeking to recover a supposed interest in the real estate
of which Russell C. Peck died seized, under and by virtue
of said fourth clause in his will.   The defendants filed
a demurrer to the bill, which was sustained and the bill
dismissed at complainant's cost.   To reverse that decree
this appeal is prosecuted.

The demurrer was both general and special, several
objections to the sufficiency of the bill being pointed out;
but the ground of demurrer relied upon was, that under a
proper construction of the will of the testator Frederick
Dalrymple took no interest in his uncle's estate, and in
our opinion the disposition of that question will render
other questions raised by the demurrer unimportant.

The contention of counsel for appellants is, as stated
by him:   "Appellants claim that the whole will is to be
given effect, and that the fourth clause limits the second
clause, reducing the interest of the widow in one-half of
two-thirds, or in one-third, to a life estate, subject to her
right, fairly and liberally to herself, to use or dispose of
it for her comfort, support and maintenance, according
to her condition in life, and also to expend what might
be necessary to protect the interest, by paying taxes, etc.
The testator having given one-third absolutely to his
wife's sister and one-third absolutely to his wife, and also
given her power to take more if she should possibly need
it, might well intend, and by the language used did in-
tend, that the one-third, subject as above stated, should
go to his own blood."

We find nothing in the will to justify the statement
that the testator intended that his widow should take
one-third of his estate upon conditions or limitations dif-
ferent from the other one-third given her.   The second
clause gives her two-thirds of the testator's estate as a
whole.   The fourth makes no reference whatever to one-

half of that devise, but simply says, if at his wife's death there is any property in her possession or control he desires his nephew to have it. Manifestly, the two-thirds bequeathed to the wife passed to her absolutely upon the death of the testator, unless it can be said that by the precatory words in the fourth clause a trust was created in some part of it for the benefit of Frederick Dalrymple. It is true that words of recommendation, request or entreaty to a devisee or legatee will make him a trustee for the person in whose favor such request, entreaty, wish or expectation is made, provided the testator has pointed out with sufficient clearness and certainty both the subject matter and the object or objects of the intended trust. (1 Jarman on Wills,—5th Am. ed.—680; Story's Eq. Jur. —12th ed.—sec. 1068; Perry on Trusts, sec. 112.) In Hill on Trustees (4th Am. ed. 71, 110,) it is stated that words of entreaty, etc., directed to a legatee or devisee, will create a trust, "first, if the words, on the whole, are sufficiently imperative; second, if the subject be sufficiently certain; third, if the object be also sufficiently certain." If the prior devisee or legatee is given a discretion in the matter, or if the property about which the request is made is not definitely stated, or if the person in whose favor the trust is to be created is not sufficiently certain, no trust will be created, and such request or desire, however clearly expressed, will not be enforced if either of these three requisites be wanting.

We think a fatal objection to the precatory words in the fourth clause results from a failure of the testator to sufficiently describe the subject matter of the request. "If at my wife's death there is any property then in her possession or control, I desire one-half the same shall revert to my nephew," leaves it wholly uncertain as to what property is meant. Assuming that the testator, in the use of this language, referred to the property named in the second clause of the will, that which he desires his nephew to have one-half of is what is left of the whole

two-thirds, if anything, at his wife's death, and there is nothing whatever to limit or qualify her power of disposition.   In *Pope* v. *Pope*, 10 Sim. 1, where it was provided that if the wife should marry, the testator desired her to convey what property she may then possess to trustees, for the benefit of the children, as they may severally need or desire, it was held that there was not enough to create a clear and definite trust for the children, and that the expression "what property there may be" was "indefinite, and had regard to the fact that the wife might sell or alien any part of it."   So where a testator left his property to his wife, "not doubting but that she will dispose of what shall be left at her death to her two grandchildren," Lord Chancellor Thurlow said: "If the intention is clear what was to be given and to whom, I should think the words 'not doubting' would be strong enough.   But when, in point of context, it is uncertain what property was to be given and to whom, the words are not sufficient, because it is doubtful what is the confidence which the testator has reposed, and where that does not appear the scale leans to the presumption that he meant to give the whole to the first taker."   In *Wynne* v. *Hawkins*, 1 Bro. C. C. 179, where the testator, after appointing his wife guardian of his children, gave all his property to her, "trusting that she would, in fear of God and love to the children committed to her care, make such use of it as should be for her own and their spiritual and temporal good, remembering always, according to circumstances, the church of God and the poor," it was held the wife was absolutely entitled to the property, there being no ascertained part of it provided for the children, and the wife being at liberty, at her pleasure, to diminish the capital, either for the church or the poor, and hence that it was the plain intent of the testator to leave the children dependent on the wife. (*Curtiss* v. *Rippon*, 5 Madd. 434; *Harrison* v. *Harrison's Admx.* 44 Am. Dec. 375.)   The foregoing authorities are cited in a note, and the author

of the same note adds: "In the great majority of cases where there has been a gift of property to a person, followed by words of recommendation that he should give to a certain object, and which have been held uncertain as to the subject matter of the gift, the expressions used have referred to a residue or remainder existing at the person's death, as 'what shall be left,' 'what he shall die seized of,' 'what he shall die possessed of,' 'what he may have saved,' 'bulk of his residuary estate,' 'remainder of her property,'" etc.,—citing numerous cases.

The attempt to construe the language of the fourth clause so as to make it apply to one-third of the testator's estate cannot be sustained. There is not a single word, either in the first or fourth clause, from which such an inference can be drawn. Counsel speaks of the will as "mentioning the one-half of the two-thirds." To read those words into the fourth clause would be to make a will for the testator under the guise of construing the one made by him. Manifestly, the two clauses, taken together, show a clear intention to give two-thirds of the estate to the wife absolutely, with the expressed wish or desire that if any part of it remain in her possession or control at her death it should go to the nephew; but the desire expressed in the fourth clause created no trust in favor of Frederick Dalrymple, for the reason that whether anything should be left or not depended entirely and solely upon the unrestrained will of the wife. The same construction, under a long line of decisions of this court, also renders the fourth clause repugnant to the second, and therefore void. "If land be devised to a person with general power to dispose of the same, an estate in fee simple passes. Such a power of disposition amounts to an absolute gift of the property. But if it be devised to a person for life, with power to dispose of the reversion, an estate for life only passes; and if the devisee dies without disposing of the reversion, it goes to the heir of the devisor." (*Fairman* v. *Beal,* 14 Ill. 244; 4 Kent's

Com. 535, 536; *Jarrot* v. *Vaughn*, 2 Gilm. 132.) To the same effect are *Funk* v. *Eggleston*, 92 Ill. 515, *Wolfer* v. *Hemmer*, 144 id. 554, *Wilson* v. *Turner*, 164 id. 398, and *Lambe* v. *Drayton*, 182 id. 110.

That the language, "if at my wife's death there is any property then in her possession or control," gives to the wife an absolute power of disposition, see *Estate of Cashman*, 134 Ill. 88, and *Saeger* v. *Bode*, 181 id. 514. Of course, if the power of disposition in the first taker is a qualified or limited power, there is not necessarily a repugnancy, —and this, we think, will generally explain any seeming conflict in the authorities. Thus, in *Bergan* v. *Cahill*, 55 Ill. 160, in which counsel for appellants says the will was very similar to the one at bar, "the wife is only given the power to sell and dispose of the property in case she is not supported by her children." Had the wife, in that case, attempted to exercise the power of alienation without reference to the condition imposed, a court of equity would have restrained her. She did not dispose of the property or attempt to do so.

To attempt to reconcile the language used by courts in the construction of wills would be a hopeless effort. The variety of language used in such instruments is without limit, and as the words must always be so construed and given such a meaning as will best effectuate the intention of the testator, the decisions are necessarily as varied as are the different expressions used in the wills. We have been unable, however, to find a case which will give support to the construction attempted to be placed upon this will by appellants, and we entertain no doubt that to give it the construction contended for would defeat, rather than carry out, the intention of the testator.

The judgment of the superior court will be affirmed.

*Judgment affirmed.*