(No. 24534.

W. A. BOOTH *et al.* Appellants, *vs.* STELLA KRUG *et al.* Appellees.

*Opinion filed April 20, 1938.*

FRED J. RICE, and FRED W. GEE, for appellants.

OTTO KERNER, Attorney General, CONGER & ELLIOTT, P. J. KOLB, and WALTER KOLB, for appellees.

Mr. CHIEF JUSTICE FARTHING delivered the opinion of the court:

Walter S. Booth, then a resident of Wabash county, died testate on August 12, 1933, and on October 23, following, his will was duly admitted to record. The appellants, heirs who were not remembered in the will, filed their complaint in the circuit court asking that the trust provisions of the will be held invalid. Stella Krug, Ruth A. Wilson and Mamie S. Darnell, beneficiaries under the private testamentary trust, the executors of the will, and the directors of school district No. 13, in White county, were made defendants. The Attorney General filed an intervening petition on behalf of the charitable trust created by the will, and answered the complaint. The cause was heard on the complaint, the answers and a stipulation as to heirship, and, while it was under advisement, appellants obtained leave and filed a supplemental complaint setting up the death of one of the co-trustees since the commencement of the suit, and alleging that the trusts created by the will had terminated by reason of the death of such trustee. On motion of defendants the supplemental complaint was stricken from the files. The court entered a decree in favor of the defendants and taxed the costs against the plaintiffs. A freehold is involved, and the appeal has been perfected directly to this court.

The testator, by the first six clauses of his will, provided that his just debts and certain specific legacies be paid, and these clauses of the will were not questioned. The material parts of the will read as follows:

"Seventh: After the payments of the bequests in paragraphs Two (2), Three (3), Four (4), Five (5), and Six (6), above, then it is my will that the income from the residue of my estate (to be invested in United States Bonds or in other equally good securities) to be given absolutely to my sister, Stella (Booth) Krug, for her upkeep, maintenance and enjoyment, as long as she lives.

"Eighth: When the bequests mentioned in paragraph Seven (7) above shall terminate through the death of my sister, Stella (Booth) Krug, it is my will that the income from the residue of my estate be given in absolutely equal portions to my said half-sisters, Ruth A. Wilson and Mamie S. Darnell, provided they are single. In case one is unmarried the division to each of them should be made according to her needs for her upkeep, maintenance and enjoyment as long as she lives. In the event of either dying before the other, then it is my will that the whole amount of said income be paid to the survivor (provided she needs it) as long as she shall live.

"Ninth: In the event the said income does not meet the needs of my said sister, Stella (Booth) Krug, as set forth in Paragraph Seven (7) above, then the executors of this Will are hereby authorized and directed to use any or all of my estate to meet the needs of my said sister, Stella (Booth) Krug.

"Tenth: When the provisions of paragraph Nine (9) above shall have lapsed through the death of my sister, Stella (Booth) Krug, then in the event that the said income does not meet the needs of my said half-sisters, Ruth A. Wilson and Mamie S. Darnell, as prescribed in paragraph Eight (8) above, the executors of this Will are hereby authorized and directed to use any or all of my estate to meet the needs of my said half-sisters, Ruth A. Wilson and Mamie S. Darnell.

"Eleventh: When the bequests mentioned in the above paragraphs Seven (7), Eight (8), Nine (9), and Ten (10) shall have terminated through the death of my said sister, Stella (Booth) Krug, and my said half-sisters, Ruth A. Wilson and Mamie S. Darnell, it is my will that the residue of my estate be given to the Board of Education of the Public Schools of the Village of Enfield, White County, Illinois, known as District Number Thirteen (13) for the erection and equipment of a building in said Village of Enfield, for

the use of said public schools; provided, however, that said Board of Education shall contribute an equal amount toward such building and equipment. The said Board of Education must meet the above conditions in a reasonable length of time.

"Twelfth: When all the terms of the above paragraphs have been met, the residue of my estate shall be used for the improvement and upkeep of the Public Schools of the Village of Enfield, White County, Illinois, known as District Number Thirteen (13).

"Thirteenth: I hereby nominate and appoint D. L. Boyd, Carmi, Illinois, and T. H. Daly, Mt. Carmel, Illinois, my trustees and executors to carry out and execute the provisions of this will."

Appellants contend that the trust is invalid, because the trustees may, in their discretion, divert the principal of the fund from the charitable to the private trust, and that the possibility of there being nothing left for charitable purposes after the termination of the life estates renders the trust void. They rely on *Wilce* v. *VanAnden,* 248 Ill. 358, *Coulson* v. *Alpaugh,* 163 id. 298, *Mills* v. *Newberry,* 112 id. 123, and *Spaulding* v. *Lackey,* 340 id. 572. But in *Burke* v. *Burke,* 259 Ill. 262, 267, we explained the decisions in *Wilce* v. *VanAnden, supra,* and *Mills* v. *Newberry, supra.* In the *Burke case* the testator devised his lands to his wife for life, with full power to sell and convey, "in order to supply herself with the comforts and necessities of life," at any time she deemed necessary. After her death the property was to go to St. Mary's Catholic Parish "for the erection or support of a school to be erected and maintained by such Parish." It was there urged, as it is here, that by reason of the power in the life tenant to sell the real estate or some part of it, an uncertainty existed as to the subject matter of the trust, and that it was, therefore, void. We limited the holdings in the *Mills* and *VanAnden cases* to the proposition that the subject matter of a trust must be cer-

tain, and we pointed out the uncertainty of the subject matter in both those trusts. In the *Mills case* the testatrix left all her property to her mother, "upon the express condition, however, that she devise, by will to be executed before receiving this bequest, so much thereof as shall remain undisposed of or unspent at the time of her decease, to such charitable institution for women, in said city of Chicago, as she may select." The mother refused to do this, and, therefore, took nothing by her daughter's will. It was claimed that a trust in favor of charity attached to the property in the mother's hands, as heir of her daughter. We held that the mother's absolute power of disposing of the property unconditionally rendered the subject matter of the trust uncertain, and the trust could not be enforced. In the *Wilce case* the trustees were instructed to pay certain annuities to legatees and to use the *corpus* therefor, if necessary. After the death of the annuitants, the trustees were directed to pay the balance, in their uncontrolled discretion, either to named relatives of the testator or to charity. We held the charitable trust void on two grounds: First, because the entire amount might be used for annuities and nothing left for charities, and, second, because the trustees had an absolute discretion, with no rule to guide them, to deprive the charity of the fund. In *Burke* v. *Burke, supra,* we limited the *VanAnden case* to the second reason stated above, and said that the trust was void because of the trustees' uncontrolled discretion to devote the entire fund to a private use. We said in the *Burke case,* at page 267: "It may well be doubted whether the decision in *Mills* v. *Newberry* went so far as it was carried in *Wilce* v. *VanAnden* or whether the trust in the latter case would have been held void because the payment of the annuities might exhaust the fund, but it was clearly void for the second reason stated in the opinion,—that is, because of the discretion given to the trustees to give to the brothers and sisters of the testator such portion of the trust fund as they might think

best and devote the rest to charity. The proposition upon which *Mills* v. *Newberry* was decided, (and the same applies to *Wilce* v. *VanAnden*,) was, not that the possible exhaustion of the fund by its application to prior demands upon it, before its application to the purposes of the trust, renders the subject matter of the trust uncertain, but that there is no fund which can be the subject matter of a trust where its application to the purposes of the trust depends upon the absolute and unconditional discretion of the person in control of the fund. In such case there is nothing which a court of equity can lay hold of,—nothing binding on the conscience. The chancellor cannot direct what disposition one shall make of property which is given to him to dispose of as he chooses. This was the character of both the cases cited and of the authorities on which the opinions in those cases rely. Wherever a clear discretion or choice to act or not to act is given; wherever the prior dispositions of the property import absolute and uncontrollable ownership; wherever the trustees have an option to withdraw the funds from the purposes of the trust and apply them in their own discretion, the court cannot execute such a trust. This was the character of both the cases cited. The rule laid down in them goes to this extent and no farther and is amply sustained by the numerous authorities cited."

We pointed out that the power of disposition given the life tenant in the *Burke case* was not unlimited, but was qualified, and that equity would restrain an exercise of the power which was not reasonably necessary to supply the life tenant with the comforts and necessities of life. In the present case the power of the trustees to use the principal for the support of the life tenants could likewise be controlled by a court of chancery if there is abuse of the power. *Dean* v. *Northern Trust Co.* 266 Ill. 205, 209, follows the *Burke case,* and again explains the *VanAnden case.* See, also, *French* v. *Calkins,* 252 Ill. 243, 253. The case of *Coulson* v. *Alpaugh, supra,* relied on by appellants, follows

*Mills* v. *Newberry, supra,* and is not in point for like reasons. There, the gift was to the testator's wife for life with power to use, dispose of and sell. The testator requested his wife to make provision for his children at her death. We held that no precatory trust was created, because there was no definite or ascertained subject matter in view of the expression "what remains" used in the will, and her absolute power to devote the fund to other than trust purposes. In *Spaulding* v. *Lackey, supra,* the executors sought to have themselves appointed as trustees of a trust alleged to have been created by the will of William A. Lackey. The trust was not to begin until the death of the life tenant, who was still living. The will provided that twenty years after the death of the life tenant the trustees should convert Lackey's estate into money, and should build a private road of such materials as they might choose, but over a designated route. They were also directed to spend what remained in improving a certain public road. We held the suit was prematurely brought, since the life tenant was still living, and that the absolute power of the trustees to devote the fund to building the private road made the trust void. The *VanAnden case* was cited and followed. The *Spaulding case* is also not in point.

Under the above decisions the controlling question is whether the discretion of the trustees to use the *corpus* of the fund as well as the income for the benefit of Stella Krug and her half-sisters, is absolute and unconditional, or whether that discretion must be exercised within limits fixed by the testator. It is to be observed that neither the life tenants nor the school district complain that the trustees are improperly withholding or disposing of the *corpus* of the fund, and so we need not construe the words "upkeep, maintenance and enjoyment" except to determine if they furnish a standard that prevents the trustees from arbitrarily devoting the entire fund to the use of the life tenants. Only if the income of the fund does not equal the

needs of the beneficiaries for their up-keep, maintenance and enjoyment, may the *corpus* be used. This does not give the trustees absolute power to use the *corpus,* and a court of equity will restrain any exercise of the power without reference to the conditions imposed. (*Dalrymple* v. *Leach,* 192 Ill. 51; *Burke* v. *Burke, supra.*) While the trustees necessarily have discretion in determining if the *corpus* should be used, yet in a proper case a court of chancery could determine if that discretion had been abused. We are, therefore, of the opinion that the trustees had no absolute power to divert the fund to private purposes and defeat the charitable trust.

Appellants contend that the death of a trustee terminated the trust because they say the testator intended that the trustees should act jointly in administering the trust, and that he wished his estate to have the benefit of their joint judgment rather than their individual judgments. It is, therefore, insisted that the court erred in dismissing their supplemental complaint. Conveyances to trustees are expressly excepted from the requirement of our statute that express words are necessary to create a joint tenancy, (Ill. Rev. Stat. 1937, chap. 76, sec. 1,) and we have held that trustees hold as joint tenants, unless a contrary intention is expressed, and on the death of one trustee, the administration of the trust devolves on the survivor, and does not pass to the heirs. (*Reichert* v. *Missouri and Illinois Coal Co.* 231 Ill. 238; *Nangle* v. *Mullany,* 212 id. 247.) This is the rule generally followed. (26 R. C. L. p. 1276; Restatement, Trusts, secs. 195, 196.) There is nothing in this will which indicates that the testator intended only for the two trustees to act together. It cannot be said that the powers were personal, merely because the testator placed special confidence in the trustees, because he would not select a man to be trustee of his estate if he did not have a high degree of confidence in him. (3 Bogert on Trusts, p. 1746.) The mere giving to the trustees of the power

to use the *corpus* of the fund under certain conditions, does not, of itself, indicate that the testator intended that only those trustees should administer the trust. Hence, the supplemental complaint was properly dismissed.

Appellants contend that the chancellor erred in his construction of paragraphs eleven and twelve of the will. He held that the condition imposed in paragraph eleven which required the board of education to contribute an equal amount toward the school building and equipment to be built with the charitable trust fund was a condition precedent that had to be met within a reasonable time after the fund became available for school purposes, and the school district had a reasonable opportunity to avail itself thereof. The chancellor also found that paragraphs eleven and twelve had to be construed together, and, when so construed, it was evident that the testator intended that the *corpus* of the fund remaining after the life estates should be used for two purposes, viz., the erection and equipment of a school building and for the up-keep of school district number 13. It was accordingly held that the school district was not necessarily compelled to advance a sum equal to the *corpus* of the trust fund, but that the amount to be advanced would be determined when the fund became available, in the light of the circumstances then surrounding the district, and its needs at that time. The effect of the holding was that the condition mentioned in paragraph eleven did not apply to paragraph twelve, and the school district would only be compelled to match that part of the trust fund which would, in the future, be devoted to the erection and equipment of a building. The chancellor placed a correct interpretation on these paragraphs of the will. The reasonable time within which to comply with the condition does not expire before the fund becomes ascertainable in amount and available for school purposes. The testator could not reasonably be said to have required that the district should advance its part of the fund long before the fund will be available for school

purposes. The construction adopted by the chancellor gives effect to all parts of the will, because if the trustees were compelled to devote the residue of the fund to the erection of a building and for its equipment, there would be nothing left for the up-keep of the building under paragraph twelve.

Appellants contend that the trust is invalid because there may be an accumulation of income for more than twenty-one years after testator's death, since it is not provided that the half-sisters shall necessarily have all the income from the trust fund. The will does not direct that the income be accumulated, there is no charge that it is being accumulated, and appellants are not interested in this provision, because, if there is an accumulation it is simply void, and the income would go to the persons who would otherwise be entitled to it, in this case the half-sisters, and not the heirs generally. (*French* v. *Calkins, supra.*) This point is not well taken.

Appellants make two other contentions which need not be considered at length. They say that there was a partial intestacy because the testator did not specifically devise his real estate to his trustees. The presumption against intestacy is so strong that courts will adopt any reasonable construction of a will to avoid it. (*Welch* v. *Caldwell,* 226 Ill. 488.) In this case the testator clearly intended that his trustees were to have charge of what remained of his estate after payment of the specific legacies. Appellants also insist that the court should, at this time, determine the basis for apportioning the fund between the private and charitable trusts, but the chancellor properly held that there was no present need for separating or apportioning the *res.* Indeed, no apportionment can be made until the life estates are terminated. Then all that remains will be turned over to the charitable purposes of the trust.

The decree of the circuit court of Wabash county is correct, and is affirmed.

*Decree affirmed.*