Harry J. Miller v. Commissioner.
Miller v. Commissioner
Docket No. 34877.
United States Tax Court
1953 Tax Ct. Memo LEXIS 261; 12 T.C.M. (CCH) 506; T.C.M. (RIA) 53160; May 8, 1953
Robert W. Crowe, Esq., for the petitioner. Harold H. Hart, Esq., for the respondent. RAUM
Memorandum Findings of *262 Fact and Opinion The respondent determined a deficiency in petitioner's income tax for the year 1948 in the amount of $9,534.13. The issues presented are (1) whether the income of a trust, established by the petitioner, for 1948 is taxable to him pursuant to Sections 22 (a), 166 or 167 of the Internal Revenue Code, and (2) whether certain expenses, claimed by the trustee in its 1948 fiduciary income tax return are deductible in full against ordinary income. Findings of Fact The petitioner is an individual residing in Chicago, Illinois. He filed his income tax return for the calendar year 1948 with the collector of internal revenue for the first district of Illinois. On December 22, 1930, he executed a trust reserving for himself the right to alter, amend or change its terms. It was in fact amended from time to time, and, on February 24, 1948, the trust agreement was completely rewritten. The Chicago Title and Trust Company, an Illinois corporation, was named as trustee, and the corpus of the trust was worth about $300,000 at that time. The 1948 trust agreement is incorporated herein by reference. Relevant provisions thereof are summarized as follows: *263 "1. The trustee is to pay to the petitioner $1,000 each month for his life. The payments are to be made out of income, if available, and to the extent income is not available, they are to be paid out of the principal of the trust estate. The trustee is also to pay out of the trust estate all income taxes due from the petitioner. No expenses of trust administration are to be deducted from the $1,000 payments, but real estate taxes on petitioner's home, insurance related to the home and its contents, and premiums paid by the trustee on insurance on petitioner's life are to be deducted from such payments. "2. The trustee has the right to pay the petitioner any amount out of principal that it "in its sole discretion deems necessary from time to time for the proper support, health, comfort, welfare or maintenance of the Trustor'. The trustee's decision in this regard 'shall be conclusive upon the Trustor [petitioner] and all other beneficiaries hereunder'. "3. Upon petitioner's death the principal of the trust is to be distributed to seventeen named beneficiaries in specified amounts. If any individual beneficiary dies, or ceases to exist, prior to the petitioner, his share is to *264 become part of the residue of the trust estate. The residue of the trust estate and 'all accrued, accumulated and unpaid income' is to be distributed equally among five named individuals provided they or any of them survive the petitioner. "4. The petitioner reserved the right to add to the corpus of the trust, with the consent of the trustee. "5. 'The Trustor [petitioner] reserves only the right to add any beneficiary who is to take in the event of his death, to change the beneficiaries now named in this trust to take in the event of his death, and to determine the sum or sums that any beneficiary added or named by the Trustor is to take in the event of his death. Trustor makes no other reservations whatsoever. In all other respects this trust is irrevocable.'" In acting upon petitioner's requests for payments of principal, the trustee investigated petitioner's need therefor, the amount of the income available to petitioner, the value of the trust and other pertinent factors, and the trust officer, trust counsel and a committee of the trust company considered the results of the investigation. The interest of the trustee was not substantially adverse to that of the petitioner. *265 The trustee filed a fiduciary income tax return using the cash method of accounting for the calendar year 1948, and reported the receipt of $10,986 in ordinary income, and net capital gains of $22,717.35. The trust had owned 236 shares (about 47 per cent of the total) of the common stock of West Side Buick Sales Company (a corporation hereinafter referred to as "West Side"). Petitioner's brother, who also owned a substantial amount of the stock in that corporation, died on October 31, 1947, and his death, together with the subsequent loss of the franchise to sell Buick automobiles, necessitated the liquidation of West Side. Capital gain in the amount of $46,574.34 was received by the trustee in the liquidation of West Side in 1948, and was a component part of the net capital gain reported as income by the trustee. In 1948, the trustee distributed $8,910.19 of income to the petitioner, which was reported by him. At some time prior to the taxable year, the petitioner became afflicted with a disease known as Huntington's Chorea. This disease, which became progressively worse, seriously affected the petitioner's powers of motion and speech. The petitioner had been living in a hotel *266 and various persons had access to his apartment. Some of them were taking advantage of his condition and, as a result, his estate, some of which was in the aforementioned revocable trust, was being dissipated. The trust was amended and rewritten and put into the state which has heretofore been set forth, in an effort to preserve his assets and take them out of the reach of those persons who were thought to have been improperly influencing him. The Commissioner determined that all of the income realized by the trust in 1948 was taxable to petitioner under Sections 166, 167, and 22 (a) of the Internal Revenue Code. [1]
During the calender year 1948, the following expenses were paid by the trustee in the administration of the trust: (a) Management fee of trustee - $1,838.14. Of this amount, $1,046.44 was a standard annual charge for trust administration, of which $8.30 was allocated to exempt income. The remaining $800 was a charge *267 for extra services, which consisted mainly of the trust officer's numerous attempts to impress upon the petitioner the limitations that he had placed upon his spending power by reason of the new trust and conferences with the persons who had been influencing the petitioner, during which it was attempted to explain the petitioner's situation to them. Other extra services were performed in watching the petitioner's expenditures to see that his money was not squandered. (b) Legal fees - $2,853.00. This amount is the total amount for legal services rendered the petitioner and the trust by the law firm of Ferre C. Watkins, from October 1946, through February, 1948, and was paid by the trustee in 1948. The services for which the bill was rendered are the following: (1) $350.00 - advice relating to the liquidation of West Side, from the point of view of selecting the mode of liquidation that would be most beneficial to the stockholder. The fees for the actual handling of West Side's liquidation were billed to it directly. (2) $180.00 - services relative to the purchase of a home for petitioner. Title to the home was taken by the trust. (3) $500.00 - services performed in obtaining *268 waiver of insurance premiums on petitioner's life due to disability. (4) $250.00 - services performed in persuading petitioner to convey assets held in his name to the trustee. (5) $1,573.00 - redrafting the trust indenture. (c) Chicago Title and Trust Company distribution fee, relating to the examination of the trust estate when it was necessary to distribute principal to the petitioner - $210.71. (d) Transfer tax incurred on transfer of securities from petitioner to the trust - $11.50. (e) Illinois taxes on property held by the trust - $210.76. The foregoing expenses were taken by the trustee as deductions on its return for 1948, thereby reducing the amount of income earned by the trust which was attributed to petitioner. In determining the deficiency, the Commissioner disallowed the deduction for Illinois taxes to the trustee but allowed it directly to the petitioner, with the result that as to this item there is no controversy between the parties. As to the remaining items, the Commissioner did not rule that any particular one of them failed to qualify as a deduction; rather, he determined that a portion of the total, to the extent of $3,956.80, represented "expenses *269 attributable to capital gain", disallowed that amount as a deduction against ordinary income, but allowed it in determining the amount of capital gain. The result increased the amount of the deficiency determined against the petitioner. The portion of the legal fee relating to the purchase of a home for petitioner was a capital expenditure and part of the cost of the home. All of the remaining contested expenses were ordinary and necessary expenses incurred for the production or collection of income or for the management, maintenance and conservation of property held for the production of income and no part of them was in fact "attributable to capital gain". Opinion RAUM, Judge: 1. The petitioner does not argue that the corporate trustee does not have the powers to revest trust corpus in the petitioner and to accumulate the income from the trust, in excess of the $1,000 monthly payments, either for future distribution to the petitioner or for distribution after his death in accordance with his directions under the trust. Nor does the petitioner contend that such powers are insufficient to cause the income from the trust to be taxed to the grantor under Sections 166 and 167 of the Internal Revenue Code *270 . [2] His only argument to resist the application of those sections is that since these powers can be exercised only by the trustee, the income from the trust is not taxable to the petitioner since the trustee has a "substantial adverse interest" within the meaning of those sections. Petitioner's contention is that the trustee owes a fiduciary duty, under Illinois law, to the remainder beneficiaries as well as to the petitioner; that it can be surcharged for an abuse of that duty; and that its interest is therefore adverse to that of petitioner. We do not agree that the trustee has a "substantial adverse interest" within the meaning of Sections 166 and 167. *271 It is plain, and has already been recognized, that the mere interest of the trustee does not rise to the level of a "substantial adverse interest" under the statute. Regulations 111, Sec. 29.166-1 (b) and Sec. 29.167-1 (b) provide that "A bare legal interest, such as that of a trustee, is never substantial and never adverse." And in Morton v. Commissioner, 109 Fed. (2d) 47 (C.A. 7), involving trusts governed by Illinois law, the court of appeals said (p. 50): "It is, we think, fairly inferable that the term 'substantial adverse interest' was not intended to include such colorable interests as a commercial trustee." See also Helvering v. Stuart, 317 U.S. 154, 165; Reinecke v. Smith, 289 U.S. 172, 174-175; Loeb v. Commissioner, 113 Fed. (2d) 664 (C.A. 2), certiorari denied, 311 U.S. 710; Ewald v. Commissioner, 141 Fed. (2d) 750 (C.A. 6). Moreover, we think there is absent here even the factual basis for assuming that there was any real likelihood that the trustee would be surcharged for abusing its discretion in making distributions to petitioner. The trust was established by the petitioner himself, for *272 his own benefit. He was to receive at least $12,000 a year taxfree from the trust, whether or not the trust had sufficient income for that purpose. No one else was to receive any income from the trust during his lifetime. Furthermore, in view of petitioner's physical condition and obvious needs, the trustee was explicitly given the right in its sole discretion to pay him any further amounts out of principal deemed necessary for his "proper support, health, comfort, welfare or maintenance." And the decision of the trustee in this regard was stated to be conclusive not only upon petitioner but also "upon all other beneficiaries". Taking into account the purpose of the trust, the unusual breadth of discretion vested in the trustee, the provision that the exercise of its discretion is to be binding upon all the beneficiaries, and the further provision that the petitioner himself could change beneficiaries at will, it seems virtually beyond comprehension that any Illinois court would ever surcharge the trustee by reason of the exercise of its discretion in making payments out of principal to the petitioner. We have been cited no Illinois decision in any comparable situation that suggests *273 such a result. The Illinois cases cited by petitioner ( Booth v. Krug, 368 Ill. 487; Walliser v. Northern Trust Co. of Chicago, 338 Ill. App. 263; Burke v. Burke, 259 Ill. 262) present entirely different factual situations. We have concluded that the trustee does not have an interest which is substantially adverse to that of the petitioner. Accordingly, the respondent was correct in his determination that the income from the trust is taxable to petitioner under the provisions of Sections 166 and 167 of the Code. It is therefore unnecessary to discuss the respondent's contention that the trust income is also taxable to petitioner by reason of Section 22 (a), although Commissioner v. Buck, 120 Fed. (2d) 775 (C.A. 2), goes far to sustain respondent's position in that regard. See also Lura H. Morgan, 2 T.C. 510, 515-516. 2. As to the expenses in controversy, deducted by the trustee presumably under Section 23 (a) (2) of the Code, [3] the Commissioner has not denied that the expenditures were in fact made in 1948. In his deficiency notice he simply charged an arbitrary portion of them against capital gain and allowed the *274 remainder as a deduction against ordinary income of the trust. Whether, in this posture of the case, it is open to respondent now to contest the deductibility in toto of each of the items, may be open to some question. However, although the issue is a close one as to one or two of the items, we have reached the conclusion that, in view of the special facts here presented, the contested expenditures, except the $180 for services in connection with the purchase of a home for petitioner, were ordinary and necessary expenses incurred "for the production or collection of income, or for the management, conservation or maintenance of property held for the production of income" and that such expenditures were not "attributable to capital gain" as determined by the respondent. As to the $180 item, the facts are very clear that this was neither a permissible deduction under Section 23 (a) (2) nor an allowable offset against capital gain received on the disposition of other assets in 1948; it was part of the cost of the home and may be taken into account only when the home is sold. We conclude that petitioner is not entitled to any benefit tax-wise from this item in the computation of his tax *275 liability for 1948. Decision will be entered under Rule 50. Footnotes
1. Although the total deficiency is $9,534.13, petitioner has informed the Court that the Commissioner determined an overassessment as to the trustee in the amount of $6,167.81, so that the net amount in issue is $3,366.32.↩
2. SEC. 166. REVOCABLE TRUSTS. Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested - (1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or (2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor. SEC. 167. INCOME FOR BENEFIT OF GRANTOR. (a) Where any part of the income of a trust - (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor: or (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor: or (3) is, or in the discretion of the grantor or of any persons not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23(o), relating to the so-called "charitable contribution" deduction); then such part of the income of the trust shall be included in computing the net income of the grantor.↩
3. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - * * *
(2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩