E. HARVEY WILCE *et al.* Trustees, Appellant, *vs.* EVELYN
VANANDEN *et al.* Appellees.

*Opinion filed February 25, 1911.*

1. WILLS—*when trustees may resort to corpus of fund to pay
annuities.* Where a testator provides for the payment of specified
annuities to his wife and daughter, disposes of the family residence
and gives the remainder of the estate to trustees, first, to pay the
annuities, and second, to dispose of enough of the estate to raise a
fund of $75,000, if it should produce so much, "from which, to-
gether with the income thereof, they shall pay said annuities," the
trustees may resort to the *corpus* of the fund to pay the annuities
if the income thereof is insufficient.

2. SAME—*there must be certainty as to the subject matter of
a charitable trust.* To constitute a valid charitable trust there
must not only be language sufficient to raise the trust and certainty
as to the objects thereof, but also certainty as to the subject mat-
ter, and if it is uncertain whether there will be anything in the
hands of the trustees to devote to the charitable purpose the trust
for such purposes is invalid.

3. SAME—*a trust for charitable use is invalid if trustees have
discretion to defeat it.* Where trustees are given power to choose
between charities the bequest may be upheld, and this is true al-
though a definite part of the fund is set aside for charity and a
definite part for some private trust; but if the trustees are given
power to devote the entire fund to a private trust if they choose
to do so, and thereby defeat the charity, the trust is invalid.

4. SAME—*when trust provision of will is void.* A provision of
a will authorizing the trustees, if any portion of the trust fund
remains in their hands after the death of certain annuitants, to
apply so much of the remaining fund as they may see fit for the
benefit of the needy brothers and sisters of the testator, and apply
the remainder, in their discretion, to the advancement of the cause
of temperance or in aid of one or more manual training schools in
the city of Chicago, is void.

5. SAME—*the law favors vesting of estates.* The law favors
the vesting of estates, and in the absence of any intention of the
testator appearing to the contrary the estate will vest at his death.

6. TRUSTS—*when the court may decree termination of a trust.*
Where a trust for private and charitable purposes in the resi-
due, if any, remaining in the hands of the trustees at the death of
the testator's widow and adopted daughter is void, and by reason
thereof the trust estate vests in such adopted daughter as the sole

heir of the testator, subject to the rights of the widow, a court of equity may terminate the trust where the parties interested are *sui juris* and consent to such course and no reason appears why the trust should continue.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

BULKLEY, GRAY & MORE, for appellants.

ADAMS, BOBB & ADAMS, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by E. Harvey Wilce and George C. Wilce, as trustees under the last will and testament of Edwin P. Wilce, deceased, against the appellees, for the construction of the will of Edwin P. Wilce. An answer and replication were filed, and Eva R. Wilce and Edwina May VanAnden filed a cross-bill. A decree was entered construing the will and terminating the trust therein created, and the complainants have prosecuted this appeal.

Edwin P. Wilce died the 20th day of September, 1889, testate, leaving Eva R. Wilce, his widow, and Edwina May Wilce, (now Edwina May VanAnden,) an adopted daughter, him surviving as his only heir-at-law. His will was admitted to probate, and Thomas Wilce and Alexander H. Lowden, who were named as executors and trustees under the will, duly qualified as executors. The will provided (1) for the payment of debts and funeral expenses; (2) that an annuity of $2500 per year should be paid his widow, Eva R. Wilce, during her life and until she should again marry; (3) that an annuity should be paid his adopted daughter, Edwina May Wilce, of $500 per year until she should arrive at the age of fifteen years, afterward $1000 per year until the death or re-marriage of his widow, and after the death or re-marriage of his widow $2500 per year during her life; (4) he devised his residence, household

furniture, etc., to his widow during her life and at her death to his adopted daughter in fee simple; (5) all the balance of his estate he gave to Thomas Wilce and Alexander H. Lowden in trust, first, to pay annuities to his widow and adopted daughter; second, to dispose of enough of his estate to raise a fund of $75,000, if it should produce so much, "from which, together with the income thereof, they shall pay said annuities;" and third, that the business then being carried on by him as a sash, door and blind factory be incorporated and certain stock sold to certain employees and the balance sold by the trustees, the proceeds to be used, in connection with the proceeds from the sale of other property, to constitute the $75,000 fund with which to pay annuities. The fourth clause of the fifth paragraph of the will, upon which the main contention rests in this case, reads as follows:

"(4th) The surplus, if any, remaining after setting apart said sum of seventy-five thousand dollars, ($75,000,) and also the entire part or portion of my estate remaining after the death or re-marriage of my said wife and after the death of my said daughter, shall be disposed of by my said trustees as follows, to-wit: They may give such part or portion thereof as they may think best and proper to any one or more of my brothers or sisters that may stand in need of the same, in the judgment of my said trustees, and the remainder thereof shall be devoted by said trustees, in their discretion, to the advancement of the cause of temperance or in aid of one or more manual training schools in said city of Chicago."

The executors in 1894 settled their accounts in the probate court and turned over to themselves, as trustees, $3264.88 in cash and real estate estimated to be worth $80,000. Thereafter Thomas Wilce died and Alexander H. Lowden resigned as trustee, and E. Harvey Wilce and George C. Wilce, brothers of the testator, who were named as successors in trust in the will, were duly appointed by

the circuit court of Cook county trustees of said estate. In 1902 Edwina May Wilce intermarried with one Frank Van-Anden, and the infant defendants, Evelyn, Itilia and William Manning VanAnden, who are represented by guardian *ad litem* in this litigation, are the fruits of that marriage. The brothers and sisters of Edwin P. Wilce, deceased, are also made parties defendant in this suit.

Three questions were raised in the court below and are discussed in the briefs filed in this court: (1) May the *corpus* of the estate be drawn upon to pay the annuities of Eva R. Wilce and Edwina May VanAnden provided the income is insufficient for that purpose? (2) Is the fourth clause of the fifth paragraph of the will void? and (3) if the aforesaid clause is void, may the trust at this time be terminated at the suit of Edwina May VanAnden and Eva R. Wilce, with the consent of the trustees? The trial court by its findings determined all of said propositions in the affirmative, and directed the trustees, by its decree, to turn over the *corpus* of the estate to Eva R. Wilce and Edwina May VanAnden upon the execution by them, to the trustees, of proper releases.

In the second clause of the fifth paragraph of the will it is provided: "And out of the fund so created they shall set apart a sum of not less than seventy-five thousand dollars, ($75,000,) (if it shall produce so much,) from which, together with the income thereof, they shall pay said annuities." This clause of the will clearly directs the trustees to pay the said annuities out of the *corpus* of the fund if the income is insufficient. In *Einbecker* v. *Einbecker,* 162 Ill. 267, it was said (p. 273): "It is often difficult to determine whether an annuity is to be paid out of the capital of an estate or only out of the income of the estate. But the question must be decided, as a general thing, by so construing the language of the testator's will as to ascertain his intention, and when the intention is ascertained it must be carried into effect. Each case will depend largely upon

the meaning of the words used by the testator in his will."
The trial court did not err in holding that the annuities of
Eva R. Wilce and Edwina May VanAnden were payable
out of the *corpus* of the trust if the income from the fund
was insufficient to pay said annuities.

The fourth clause of the fifth paragraph of the will pro-
vides that the trustees, after the death or re-marriage of
the widow and after the death of the daughter, "may give
such part or portion thereof as they may think best and
proper to any one or more of my brothers or sisters that
may stand in need of the same, in the judgment of my said
trustees, and the remainder thereof shall be devoted by said
trustees, in their discretion, to the advancement of the cause
of temperance or in aid of one or more manual training
schools in said city of Chicago." This clause of the will
we think is void for two reasons:

*First*—Because it is uncertain that there will be any part
of the fund remaining at the death of the annuitants in the
hands of the trustees, as at that time it may be entirely ex-
hausted in the payment of the annuities. The case of *Mills*
v. *Newberry,* 112 Ill. 123, is a case in point. The court,
in that case, had the will of Julia Newberry under con-
sideration. The clause in question was: "In event I die
unmarried, leaving my mother surviving, I devise and be-
queath to her all my property, both real and personal, of
every kind and nature, upon the express condition, how-
ever, that she devise, by will to be executed before receiving
this bequest, so much thereof as shall remain undisposed of
or unspent at the time of her decease, to such charitable
institution for women in said city of Chicago as she may
select." Julia Newberry died unmarried and her mother
declined to execute the will upon which the bequest was
conditioned. She therefore took nothing under the will,
and the question was, where would the property bequeathed
by the will go?—to the mother, as heir-at-law, or to the
charitable uses mentioned in the will? This court held the

language used was amply sufficient to create a trust for a charitable use but that the subject of the trust was too indefinite to be executed. Among other things, the court said: "But an insuperable difficulty which we find to be in the way of the present proceeding is the uncertainty as to the subject matter of the trust attempted to be asserted. The subject is, so much of the property as shall remain undisposed of or unspent at the time of the decease of Mrs. Newberry. The property having been previously given to her absolutely, we construe the above as giving her the full power of expenditure and disposition of the property during her lifetime. What, then, is there to which a trust can now attach—which a court of equity can now take hold of and administer as trust estate? Evidently nothing. It is not the whole property nor is it any particular part of it, for it all must remain with Mrs. Newberry so long as she lives, for her to spend and dispose of. There may or there may not be something remaining undisposed of or unspent by her at the time of her decease. Whether anything at all will be so left is now entirely uncertain. The authorities fully establish that the subject matter of the supposed trust must be certain." The will of Edwin P. Wilce conferred power upon his trustees to use the *corpus* of the trust fund to pay annuities, and the entire trust fund may be exhausted in the payment of said annuities prior to the death of Eva R. Wilce and Edwina May VanAnden. There is therefore no fund in existence, at least during the life of either of the annuitants, to which a trust in said clause 4 can attach, and there may be nothing remaining of the fund at the death of the survivor to which the trust can attach. The trust, therefore, attempted to be created by that clause of the will is by reason of its indefiniteness incapable, we think, of being enforced in a court of equity and void.

*Second*—The power is conferred upon the trustees to give such portion of the trust fund, upon the death of the survivor of the annuitants, to any one or more of the

brothers or sisters of the testator that may stand in need of the same, in the judgment of said trustees. This feature of the trust is a private trust as contradistinct from a charitable trust, and under this clause of the will the entire fund could be turned over by the trustees to an indigent brother or sister of the testator upon the death of the annuitants and nothing be left for the charitable bequest to operate upon. The result would be to make uncertain the amount set aside by the will for a charitable use and to make the entire clause of the will void. In *Mills* v. *Newberry, supra,* on page 135, it is said: " 'To constitute a valid trust, undoubtedly three circumstances must concur: Sufficient words to raise it, a definite subject, and a certain or ascertained object.' (Sir William Grant in *Cruwys* v. *Colman,* 9 Ves. 323.) 'I do not lay it down that in a will a request may not amount to a legacy, but it should be limited to some certain thing or for some certain part of a thing, and not left absolutely to the pleasure of the person to whom the request is made.' (Lord Hardwicke in *Bland* v. *Bland,* 2 Cox, 355.) In the language of Story: 'Wherever, therefore, the objects of the supposed recommendatory trusts are not certain or definite; wherever the property to which it is to attach is not certain or definite; wherever a clear discretion or choice to act, or not to act, is given; wherever the prior dispositions of the property import absolute and uncontrollable ownership,—in all such cases courts of equity will not create a trust from words of this character.' (2 Story's Eq. Jur. sec. 1070.) The rule, which we believe to be amply supported by the authorities, is thus laid down in Hill on Trustees (119): 'But any words by which it is expressed, or from which it may be implied, that the first taker has the power of withdrawing any part of the subject from the object of the wish or request or of applying it to his own use will prevent the subject of the gift from being considered certain.'—See, also, *Knight* v. *Knight,* 3 Beav. 173; *Howard* v. *Carusi,* 109 U. S. 725;

2 Pomeroy's Eq. Jur. secs. 1014-1017; *Williams* v. *Worthington,* 49 Md. 572."

In *Kendall* v. *Granger,* 5 Beav. 300, there was a bequest of personalty to trustees, to be applied for the relief of domestic distress, assisting indigent but deserving individuals or encouraging undertakings of general utility. It was held void as a charitable bequest on the ground that "the trustees have an option to apply them to purposes which are not charitable, and consequently to divert the trust fund from those purposes which this court is in the habit of considering charitable." Likewise, in the case of *Nash* v. *Morley,* 5 Beav. 177, the court says: "If there be any option in the trustees to apply the funds to purposes which, though liberal or benevolent, are not such as are in this court understood to be charitable, the trust cannot be executed here. Moreover, if it be expressly declared that the fund is to be distributed in private charity, it has been held that the court cannot execute such a trust." See, also, *Vezey* v. *Jamson,* 1 Sim. & Stu. Ch. 69; *Ellis* v. *Selby,* 7 Sim. Ch. 351; *Hunter* v. *Attorney General,* 68 L. J. Ch. (N. S.) 449; *Kelly* v. *Nichols,* 17 R. I. 306; *Randall* v. *Randall,* 135 Ill. 398; *Coulson* v. *Alpaugh,* 163 id. 298; *Minot* v. *Attorney General,* 189 Mass. 176; *Mills* v. *Newberry, supra; Welch* v. *Caldwell,* 226 Ill. 488.

It is doubtless true that where trustees are given the power to choose between charities the bequest may be upheld, and this would be true if a definite part of the fund was set aside for charity and a definite sum for some private trust. But that is not the case here. By the fourth clause of the fifth paragraph of the will the trustees are given power to apply so much of the trust fund as they may see fit for the benefit of the needy brothers and sisters of the testator, and then to apply the remainder thereof, in their discretion, to the advancement of the cause of temperance or in aid of one or more manual training schools of the city of Chicago. As has been suggested, there are two con-

siderations which render the gift to charity void for uncertainty. In the first place, it is uncertain what, if any, amount will remain upon the death of the annuitants; and secondly, the trustees have a discretion as to whether they will give what remains, if any, after the death of the annuitants, to a needy brother or sister or donate it to charity. We think it clear, therefore, that clause 4 of paragraph 5 of the will is void.

It is a well established principle that the law favors the vesting of estates, and that, in the absence of any intention of the testator appearing to the contrary, the estate will vest at the time of his death. In the cross-bill filed by Eva R. Wilce and Edwina May VanAnden they have set forth that the trust property in the form in which it now exists is unproductive and that the *corpus* of the estate is being consumed in order to pay the annuities therein provided, and they ask to have the trust terminated and the trust property conveyed to them in such proportion as they are entitled, and the trustees to account for all funds received by them and which but for their neglect and willful default might have been received by them. Furthermore, the trustees are interposing no objection to the termination of the trust. The manifest intention of the testator in placing his property in the hands of trustees was to permit his widow and daughter to enjoy the income of his property for their lives, and then to preserve the *corpus* of the estate, or what was left of it, if the income was not sufficient to pay the annuities therein provided, for the benefit of his brothers and sisters who might be in need of assistance or for the purpose of charity. There is nowhere any provision to indicate an intention of the testator that his estate should be allowed to accumulate for any given length of time or that he desired to keep it out of the control of the annuitants. The unexpected has here happened. The residuary clause in the will is void, and there is nothing to indicate that if the testator had known this he would not have

been perfectly willing for his widow and daughter to have
had absolute dominion of the property. In the absence of
any such intention appearing in the will, when all the par-
ties are *sui juris* and requesting and consenting to a termi-
nation of the trust, and when the trust cannot be carried
out according to the expressed intention of the testator,
there is no reason why the trust should not be immediately
terminated. Upon the death of the testator, clause 4 of
paragraph 5 being void, the *corpus* of the estate vested in
Edwina May VanAnden as his sole heir-at-law, subject to
the rights of the widow therein, and as the widow and
adopted daughter are the only persons who have any inter-
est in the estate at the present time, and they are willing to
accept the estate in the condition it is in at the present time
and release the trustees, there is no reason why the estate
should not be surrendered to them by the trustees. In Perry
on Trusts (vol. 2, 2d ed. sec. 920,) it is said: "Although
a trust may not have ceased by expiration of time and al-
though all its purposes may not have been acomplished, yet
if all the parties who are or may be interested in the trust
property are in existence and *sui juris,* and if they all con-
sent and agree thereto, courts of equity may decree the de-
termination of a trust and the distribution of the trust fund
among those entitled. The same rule applies if it become
impossible to carry out the trust. It was for some time
doubtful whether a trust could be thus determined prior to
the time contemplated by a testator, but it is now well set-
tled that where all the parties are capable of acting and
desire to terminate the trust, courts can decree its deter-
mination. There can be no doubt, upon principle, that
when all those who have the entire legal and beneficial in-
terest in the property agree to dispose of it in a particular
manner, courts will give effect to their agreements." The
doctrine as thus announced by Mr. Perry in his work on
Trusts is sustained by *Eakle* v. *Ingram,* (Cal.) 75 Pac. Rep.
566; *Armistead* v. *Hartt,* 97 Va. 316; *Conley's Estate,*

197 Pa. St. 291; *Sears* v. *Choate,* 146 Mass. 395; *Taylor* v. *Huber,* 13 Ohio St. 288; *Hyde's Exrs.* v. *Hyde,* 64 N. J. Eq. 6; *Welch* v. *Episcopal Theological School,* 189 Mass. 108.

Finding no reversible error in this record the decree of the circuit court will be affirmed. ·     *Decree affirmed.*