(No. 20081.—

W. H. SPAULDING *et al.* Exrs., Appellants, *vs.* LOTTIE L. LACKEY *et al.* Appellees.

*Opinion filed October 25, 1930.*

JOE CRAIN, for appellants.

CHARLES L. RICE, and CHARLES E. FEIRICH, for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

W. H. Spaulding and F. L. Hoffmeier, individually and as executors of the last will and testament of William A. Lackey, deceased, filed a bill in the circuit court of Pulaski county for their appointment as trustees of a trust alleged to have been created by the will; for directions with respect to the duties to be performed by the trustees and for the partition of the real estate left by the testator. Lottie L. Lackey, the widow, the Attorney General of the State and the testator's heirs, nineteen in number, were made defendants to the bill. Answers were filed by the widow, the Attorney General and certain of the heirs and a replication followed. Evidence was heard and a decree denying the prayer of the bill was rendered. From that decree the complainants prosecute this appeal.

William A. Lackey, a farmer, resided in Pulaski county and on May 4, 1917, executed his last will. By the second section of the will, he directed the payment of his debts and funeral expenses and the erection of a granite monu-

ment to mark his grave, the monument to cost not less than ten thousand dollars and to be selected by his widow, or in the event of her death, by the appellants as trustees. He gave to his widow, by the third section, all the residue of his property during her life. The fourth, fifth and sixth sections are as follows:

"Fourth. I further desire that after the death of my beloved wife, Lottie L. Lackey, that the entire estate then remaining shall be taken charge of by Dr. B. A. Royall, president, and H. M. Parker, cashier, of the First National Bank of Mounds, Illinois, or their successors in office, and handled under the direction of the board of directors of above mentioned bank, or their successors in office, in the following manner, to-wit: That Dr. B. A. Royall, president, and H. M. Parker, cashier, or their successors in office, who are hereby constituted my legal trustees, shall receive all moneys, rents or incomes of whatsoever nature due the estate, and they shall use the same to pay all just debts, then outstanding; also, they shall pay all legal taxes at the proper time.

"Fifth. I further desire that my designated and appointed trustees shall use the residue of the rents or income from any source due the estate, after all claims are paid as provided for in the fourth request, in keeping up the family cemetery, on my farm, or the farm or farms of which I may die seized, for a period of twenty years from my death, or should I die before my beloved wife, Lottie L. Lackey, then this trust shall extend twenty years from her death, at the expiration of said twenty years, then it is my will that my aforesaid trustees shall sell and convert into moneys or cash, all properties belonging to my estate, and, that said trustees shall then expend all moneys belonging to my estate in building the following roadway: Commencing at the east gate of the Lackey Cemetery, thence east one-quarter of a mile, thence north along section line, between sections 15 and 14, one-half of a mile to public road,

and thence west to road known as the Mounds to Pulaski road, and thence south along said Mounds-Pulaski road until all of the moneys belonging to my estate have been spent and exhausted. It is my will that my appointed trustees shall select or choose the kind of material of which the aforesaid road is to be built.

"Sixth. I further desire that no real estate of which I may die seized shall be sold for a period of twenty years from the time of my death, or should I die before my beloved wife, Lottie L. Lackey, then it is my will that no real estate belonging to this trust shall be sold for a period of twenty years from the time of her death, excepting in carrying out an expressed agreement with regards to some land in Arkansas, owned in partnership, and to be sold when agreeable to the other partners, my part of the proceeds of such sale to be paid to my appointed trustees and to become a part of and to be used as specified the other funds shall be used." By the seventh section, the president and cashier of the bank mentioned, or their successors in office, were named as executors of the will.

The testator died on March 26, 1927, leaving his widow, but not a descendant surviving him. His real estate was valued in excess of $9000 and his personal property upwards of $36,000. He had no interest, at the time of his death, in the land in Arkansas mentioned in the sixth section of the will. On June 3, 1927, the will was admitted to record by the county court of Pulaski county and letters testamentary were issued thereon to the appellants, the successors respectively to Royall and Parker as president and cashier of the First National Bank of Mounds. On the same day the widow renounced the will and elected to take, in accordance with the statute, one-half of her deceased husband's estate after the payment of all just claims against it.

By a warranty deed dated October 29, 1915, the testator, then a widower, conveyed approximately one acre of land to E. J. Lackey, R. H. Porterfield and Ollie Lackey,

as trustees of the Lackey Cemetery. The road which the testator, by the fifth section of his will, directed to be built upon the expiration of twenty years from his widow's death, would begin at the east gate of this cemetery and run thence east one-quarter of a mile; thence north along the section line, one-half of a mile to a public highway; thence west to the Mounds-Pulaski road and thence south along that road for such a distance as the funds of his estate would permit. A public highway runs east and west about a quarter of a mile south, and the Mounds-Pulaski road runs about one-half of a mile west, of the cemetery, and since the testator executed his will, the latter road has been improved by the State and constitutes a part of Route 2 of the State-wide system of durable hard-surfaced roads. By reason of this change, the appellants state, in their bill, that the road proposed by the testator is not now necessary to gain access to the cemetery and that the construction of a road from the cemetery south to the east and west highway and the improvement of that highway west to Route 2 would be less expensive. The first course of either route, whether proceeding east or south from the cemetery, would run over land left by the testator.

To reverse the decree, the appellants contend that the testator created a valid trust; that the title to the estate vested in the trustees named in the will and that the trust should be executed. The appellees, on the contrary, contend that the testator's attempt to create a trust was ineffective and void and that the circuit court properly denied the prayer of the bill.

To support their contention that a valid trust was created by the will, the appellants argue that the widow, by her renunciation, lost the right to select the monument desired by the testator, and hence that this right can only be exercised by the trustees named in the will. The widow, by her renunciation, rejected the provision which the testator had made for her and in effect obliterated it from the

will; and the remaining provisions of that instrument were left to operate upon the part of the estate not included within her statutory share or interest. (*McGee* v. *Vandeventer*, 326 Ill. 425). The selection of the monument was a duty of a peculiarly personal character which the testator charged upon his widow. The performance of that duty was in no way dependent upon her acceptance of the bequest and devise of a life estate in his property. The duty to select the monument continued to rest upon the widow notwithstanding her renunciation and it did not, on that account or for that reason, devolve upon the testamentary trustees.

The present execution or enforcement of the trust which the testator sought to create cannot be decreed. The widow still lives, and by the provisions of the will, the proposed road is not to be built until twenty years after her death. The testator fixed the route of the major portion of that road over existing public highways and a substantial part of one of these highways has already been improved by the State. Whether in the future the remaining portion of the route over public highways shall also be improved at public expense cannot now be determined. It is certain, however, that the testamentary trustees will not be permitted to supersede the public authorities in the selection and determination of the materials with which the public highways within the testator's route shall be built or improved.

The purpose of the proposed road is to gain access to the Lackey Cemetery. This cemetery is a private one and apparently is surrounded by the testator's land. He referred to the cemetery, in the fifth section of his will, as "the family cemetery on my farm;" and the appellants, in their bill, concede that this reference is in accordance with the fact. A portion of the proposed road, whether running east as designated by the testator, or south as suggested by the appellants, would be over private property and necessarily would be devoted to a private use. The entire fund to be derived from the conversion of the estate

into money, as directed by the fifth section of the will, can be applied by the trustees in the construction of the proposed road over private property and for a purely private purpose, and in that event nothing will be left for the improvement of those portions of public highways which constitute the remainder of the route specified by the testator. If the trustees possess the power, in their discretion, to devote the entire fund to a private trust and thereby defeat the charity, the trust is void. *Wilce* v. *VanAnden,* 248 Ill. 358; *Mason* v. *Bloomington Library Ass'n,* 237 id. 442; *Moseley* v. *Smiley,* 171 Ala. 593; *Attorney General* v. *Soule,* 28 Mich. 153; *Coit* v. *Comstock,* 51 Conn. 352; *Nichols* v. *Allen,* 130 Mass. 211; *Wheeler* v. *Smith,* 50 U. S. (9 How.) 55; *Morice* v. *Bishop of Durham,* 9 Ves. Jr. 399; *James* v. *Allen,* 3 Meriv. 17; *Ommanney* v. *Butcher,* 1 Turn. & Russ. 260; 3 Story's Eq. Jur. (14th ed.) secs. 1542, 1543; 2 Perry on Trusts, (7th ed.) sec. 711; 2 Alexander's Commentaries on Wills, pp. 1651, 1652; 11 Corpus Juris, sec. 45, p. 330.

The testator, by the sixth section of his will, directed that no part of his real estate should be sold during the period of twenty years succeeding his widow's death and the inception of that period has not yet arrived. The appellants show neither right to nor necessity for the conversion of the testator's land into money. The trust which the testator sought to create by his will is not only presently unenforceable, but the trust fund, when available, may be wholly applied to a private, to the exclusion of a charitable, purpose, and is therefore void. The appellants have no such interest in the land left by the testator as will entitle them to maintain a bill for its partition, and the executors have ample power to carry into effect the enforceable provisions of the will. These considerations properly impelled the circuit court to deny the prayer of the bill.

The decree of the circuit court is affirmed.

*Decree affirmed.*