CRAWFORDSVILLE TRUST COMPANY, EXR., ET AL. *v.* ELSTON BANK & TRUST COMPANY, EXR., ET AL.

[No. 27,333. Filed March 4, 1940.]

598

600

*W. J. Sprow* and *Harding & Harding*, all of Crawfordsville, for appellants.

*Foley & Foley, Walter W. Spencer, John B. Newlin, Walter N. Haney, Arthur McGaughey, Howard O. Sigmond,* and *Ristine & Ristine,* all of Crawfordsville; and *Louis B. Ewbank,* of Indianapolis, for appellees.

SWAIM, J.—George T. Durham, a resident of Montgomery County, Indiana, died testate, February 27, 1937, leaving as his only heir his widow, Sarah E. Durham. At the time of his death he was the owner of personal property of the approximate value of $242,000.00 and more than eleven hundred acres of land. His last will and testament, after providing for the payment of debts contained the following provisions:

"After the above provision is complied with, I will, bequeath and devise all the balance of my property of every kind and wherever situated, to my beloved wife, Sarah E. Durham for and during her natural life, with power and authority to dispose of, sell, convey or make gift of and to use and expend the same or any part of it in any way she sees fit.

"It is not my intention to will, bequeath and devise said property and estate to my said wife absolutely and in fee simple, but simply to authorize and empower her to use the same and dispose of the same while she has it during her life time if she sees fit to do so. In the event my said wife shall not dispose of all of said property in her life time in any of the methods set out above, then, what is left of the same at her death shall not descend to her heirs, nor under any will of hers, but the same shall be disposed of in the following manner:—"

The will further provided that after the death of his wife all the property remaining should be converted into cash and that his executor from such fund should erect a monument, pay to Babe Cunningham $1,000.00, and then distribute the balance of the fund remaining as follows:

"The balance of said fund remaining, I will in equal parts to the Montgomery County Culver Union Hospital of Crawfordsville, Indiana, and the Methodist Episcopal Church of Crawfordsville, Indiana. The portion going to said Hospital I will shall be loaned by the proper officers of said Hospital and its governing body, on good security, and the income from the same to be used to defray the expenses of patients received in said hospital under its rules, who are not financially able to pay their bills for such service. If said Hospital authorities should not have the power to loan said fund, then it is my will that the proper court shall appoint a Trustee to receive and loan said fund, and said Trustee is ordered and authorized by me to pay said income to said Hospital by its governing officers for the uses set forth above.

"The portion going to said Methodist Episcopal Church above, I will shall be expended by the trustees or governing officers of said church in installing chimes on the property of said church in the city of Crawfordsville, Indiana, in memory of the Durham family, and the balance going to said church, I leave to be expended by the trustees or governing body of said church in any manner selected by the said officers, so that the people of Crawfordsville, Indiana, and of Montgomery County, said state, shall receive the most benefit, in the discretion of said trustees or governing body."

The will then provided that in the event of the death of his wife prior to his death, or that they should die simultaneously, the executor should reduce all of the property to cash and, after the payment of the bequest to said Cunningham, should divide the balance of the fund equally between said hospital and said church "to be used by said two last named legatees as suggested and willed above."

On June 15, 1937, the said Sarah E. Durham executed her last will and testament, which was duly proved and admitted to probate on July 16, by the Montgomery Circuit Court. By this will she disposed of personal property of the value of more than $75,000.00 of which she was the absolute owner, and certain real estate which she owned in fee, and also purported to dispose of some of the assets, both real and personal, of the estate of George T. Durham. On July 3, 1937, she signed, acknowledged and delivered to the Crawfordsville Trust Company of Crawfordsville, Indiana, a written instrument denominated a "trust deed," which deed was also signed and acknowledged by the president and secretary of the Crawfordsville Trust Company, and was duly recorded July 15, 1937. This deed purported to convey all of the real estate which she owned, all that her husband had owned and also some

of the personal property of his estate. On the same date she also signed and delivered to the Crawfordsville Trust Company a written instrument which purported to be an assignment of certain of the personal property of the estate of George T. Durham. One copy of this assignment was delivered to Elston Bank and Trust Company, Executor of the will of George T. Durham, on July 8, 1937, by the secretary of The Crawfordsville Trust Company. By said trust deed and assignment, the said Sarah E. Durham purported to convey and transfer to said Crawfordsville Trust Company, as trustee, all of the property described in said deed and assignment, which property was to be held by said trust company, as trustee, for the benefit of said Sarah E. Durham during her lifetime and after her death to be held, used and distributed according to the provisions of said deed.

Said Sarah E. Durham died July 15, 1937. After her death the residuary legatees named in the will of her husband, the beneficiaries under her will, and The Crawfordsville Trust Company, as trustee under the said trust deed and assignment, all made adverse and conflicting claims to the assets of the estate of George T. Durham, which were all still in the possession of his executor. Said executor thereupon filed this action for the construction of the will of George T. Durham, and to determine and adjudicate the rights and interests of the various parties in the assets of his estate.

The trial court found the facts specially, stated his conclusions of law thereon and entered judgment in accordance therewith. It was adjudged and decreed that the will of George T. Durham gave to his wife all of his property for and during her natural life with a limited power of disposition, which power she failed to exercise during her lifetime; that the Montgomery

County Culver Union Hospital and the First Methodist Episcopal Church, both of Crawfordsville, Indiana, as residuary legatees, should take the balance of the assets remaining at her death after the payment of the specific bequests; and that all of the parties to said action, who were claiming any interest in any capacity under either the will, the trust deed or the assignment of Sarah E. Durham, should be and were enjoined and forbidden to set up, claim, or in any manner assert any right, title or interest in or to any of the said property that was owned by George T. Durham at the time of his death under or by virtue of said will of said Sarah E. Durham, her said trust deed or her said purported assignment.

The alleged errors assigned herein are that the court erred in his said conclusions of law and in overruling the motion for a new trial.

The facts in this case were such as to support an action by the executor of the estate of George T. Durham to construe the decedent's will in order to determine and adjudge the rights and interests of the various parties claiming thereunder and the duties of said executor as to said assets. *Partner* v. *Citizens Loan, etc. Co.* (1904), 163 Ind. 303, 71 N. E. 894; § 3-1102, Burns' 1933; § 439, Baldwin's 1934.

The first contention of appellants as to the construction of said will is that the widow, by said will, took an absolute title in the property of her deceased husband to the exclusion of the residuary legatees.

In considering the construction of the will all parts thereof must be construed together to form, if possible, one consistent whole. If, by such consideration, the intention of the testator is apparent his intention must prevail unless it be in conflict with established rules of law. *Grise, Admr.* v. *Weiss, Admr.* (1937), 213 Ind. 3, 11 N. E. (2d) 146. In the case at

bar, the testator said in his will that he gave the property in question to his wife "for and during her natural life" and that it was *not his intention* "to will, bequeath and devise said property and estate to my said wife absolutely and in fee simple." The will also provided that upon the death of the wife the executor should convert "all of said remaining property" into cash and make distribution thereof pursuant to the terms of the will. It is perfectly clear from the language of said will that it was not the intention of the testator that his wife should have the absolute title to said property. Nor does a construction of the will which gives the wife only a life estate with a limited power of disposition violate any rule of positive law.

Appellants earnestly insist that the power of disposition given to the wife was an absolute power and that, therefore, the will must be construed as giving the widow the fee to all of testator's estate. *VanGorder* v. *Smith* (1884), 99 Ind. 404, is one of the principal cases relied on by appellants. In that case, however, the will gave the property to the widow "to be held, used and controlled by her as long as she may live, and to be disposed of by her by will or otherwise at her death," and there was no attempt by the testator to dispose of a remainder. The will contained certain precatory language as to her use of part of the funds for the benefit of the testator's children. On those facts the rule was stated that, when a bequest of personal property is made for life with a full power of disposition, by will or otherwise, at the pleasure of the devisee, without limitation or restriction as to the time, mode or purposes of the execution of the power, the life estate is controlled by the unlimited power of disposition, and an absolute estate in the property is thereby created in the legatee. In the instant case, however,

the wife was not given an unlimited power of disposition. There was a bequest of a remainder, and every indication of the intention and belief of the testator that there would be a substantial remainder at her death.

In the case of Wiley v. Gregory (1893), 135 Ind. 647, 35 N. E. 507, a bequest to a wife "to be and remain hers during her natural life, to use, enjoy and dispose of as she may desire and after her death, all that remains undisposed of by her" to be divided between named beneficiaries, was held to give the wife only a life estate with a power of disposition. In that case the court stressed the importance of a devise of a remainder as showing the intention of the testator to be to give the first taker only a life estate, and stated the rule, "that where a particular estate is expressly devised, a contrary intent is not to be implied by subsequent words, and that an express life estate cannot generally be enlarged by implication, but it must be done by expressed words." See also Mulvane v. Rude (1896), 146 Ind. 476, 45 N. E. 659, and Rusk v. Zuck, Admr. (1897), 147 Ind. 388, 45 N. E. 691, 46 N. E. 674.

Appellants contend that a different rule applies where the property in question is all personal property. There is a statement in the case of VanGorder v. Smith, supra, which tends to support such a contention.

If the intention of the testator is not clearly apparent from the language of the will there might be occasion to consider the nature of the property involved as one factor in determining his intention. Where, as here, the intent of the testator to establish an estate only for life is clear, that intent must prevail whether the property involved be real or personal. The fact that personal property bequeathed for life is more easily disposed of, or may be used up, worn out or destroyed,

does not give an absolute title to the legatee. *Rusk* v. *Zuck, Admr., supra.*

The appellants also insist that the bequest of the remainder to the Hospital and the Church was void; that the testator died intestate as to such remainder; and that, therefore, his widow took such remainder as his sole surviving heir. Their first contention on this proposition is that the broad power of disposition given to the widow makes the amount of the remainder so uncertain and indefinite as to make these bequests invalid. The only Indiana case cited by appellants on this proposition is *VanGorder* v. *Smith, supra,* where, as pointed out above, it was held that the widow took an absolute interest in the property and, of course, there was, therefore, nothing left on which a trust for the benefit of testator's children could be established. Appellants also place much emphasis on the following cases decided by the Supreme Court of Illinois: *Mills* v. *Newberry* (1885), 112 Ill. 123, 1 N. E. 156; *Coulson* v. *Alpaugh* (1896), 163 Ill. 298, 45 N. E. 216; *Wilce* v. *Van Anden* (1911), 248 Ill. 358, 94 N. E. 42; *Burke* v. *Burke* (1913), 259 Ill. 262, 102 N. E. 293; *Spaulding* v. *Lackey* (1930), 340 Ill. 572, 173 N. E. 110; *Booth* v. *Krug* (1938), 368 Ill. 487, 14 N. E. (2d) 645, 117 A. L. R. 1193. While some of the language of the Illinois court in these cases tends to support the appellants' contention, the cases, on the facts, are all distinguishable from the instant case. In *Mills* v. *Newberry, supra,* a daughter bequeathed all her estate to her mother "upon the express condition, however, that she devise, by will to be executed before receiving this bequest" to a certain charity, whatever part of the estate "shall remain undisposed of or unspent at the time of her decease." The mother refused to make the will. An action was brought by the charity to establish the trust

prior to the death of the mother. The court there held that the mother took the property not by devise but as next of kin; that the trust was invalid for uncertainty as to subject; and that the proceeding was premature. In the later Illinois cases there is an apparent attempt, on the part of that court, to limit the effect of the decisions and language in the earlier cases. In *Booth* v. *Krug, supra,* a charitable trust was held valid where a testator directed his executors to expend whatever part of the estate might be necessary for the maintenance of his three sisters during their lifetime and to distribute the balance remaining at their death to a designated charity.

The later cases in other states are also more liberal in upholding bequests to charity and charitable trusts. In the recent case of *Cotton* v. *Town of Danville* (1938), 301 Mass. 380, 17 N. E. (2d) 209, a gift of the remainder of an estate to four charitable corporations was held valid where the testatrix had devised the estate first to her sister for life "with the right to use both the principal and income thereof for her maintenance, travel, and personal comfort and pleasure, at her own absolute discretion" and where the will further provided, "while it is my desire that the use of my property by my sister shall be limited for the purposes stated, I do not restrict her to such use, and direct that she shall not be held accountable by any one for such use as she may make of said property during her life."

Some of the confusion in the language of the early cases on this question apparently arose from a confusion between the requisites for a valid private trust and the necessary requisites of a charitable trust. From the very nature of a charitable gift or charitable trust the requisite of certainty is less

strict than in the case of a private trust. All charities are trusts in the sense that the property must be devoted to the general purpose specified by the donor, but in a case where property is given directly to a charitable institution for the purpose of promoting some or all of its general charitable purposes it is not a trust in the same sense as an ordinary private trust. The courts have uniformly recognized the differences between charitable gifts or charitable trusts on the one hand and private trusts on the other hand. The recognition of these differences has been reflected in the liberality with which the courts have sustained charitable trusts and have upheld gifts to charity. Where the intent of the testator to make a charitable gift is clear, our courts have gone far in attempting to sustain such a gift, even though it be under such circumstances that if applied to a private trust it would fail. *Dykeman* v. *Jenkines* (1913), 179 Ind. 549, 555, 101 N. E. 1013. So in the instant case, although the power of disposition given to the widow was so broad that the amount of the charitable bequests could not be definitely ascertained at the time of the testator's death, this fact does not furnish a sufficient reason for holding such bequests invalid. *Cruse* v. *Axtell* (1875), 50 Ind. 49; *Hall* v. *Grand Lodge I. O. O. F.* (1914), 55 Ind. App. 324, 103 N. E. 854; *Cotton* v. *Town of Danville, supra.*

The appellants also contend that the bequest to the Hospital was invalid because the testator in naming the Montgomery County Culver Union Hospital as a residuary legatee did not name a person or corporation capable of taking. The findings of fact show that said legatee is a county public hospital and the only public hospital in Montgomery County, Indiana; that it was established about the year 1900 and is now being operated by a governing board of

four trustees, appointed by the Board of Commissioners of said county; and that it is maintained and operated partly from taxation and in part from the proceeds of gifts. Anyone desiring to make donations for the benefit of such a hospital may vest title to the property so donated in the county where said hospital is located, to be controlled by the board of hospital trustees according to the terms of the deed, gift, bequest or devise. § 22-3231, Burns' 1933, § 4529, Baldwin's 1934. The question presented here is entirely different from the one decided in *Grimes* v. *Harmon* (1871), 35 Ind. 198, cited by appellants. In that case the court construed the will as showing an intention by the testator to name an association "the orthodox protestant clergymen of Delphi" as trustee, and since there was no such association there was no valid trustee to act. The court also pointed out that if the will were construed as naming natural persons as trustees no such persons were named and the prescribed test that they be "orthodox" was too indefinite to be applied by the court, in determining which persons were intended. The court there also held that the beneficiaries of the trust "colored children, both male and female," with no other description or limitation, were not sufficiently described that they could be ascertained. In the other case cited by appellants on this point the court therein decided that since unincorporated associations, unless recognized by statute, have no legal existence, property held by the members of such association cannot be disposed of by the association as a legal entity. *Popovich* v. *Yugoslav Nat. Home Soc. Inc.* (1939), 106 Ind. App. 195, 18 N. E. (2d) 948. In the instant case the Hospital did not purport to be an association or a legal entity. It was only an institution belonging to and maintained by the county as a public charity. Here there was no

question about the intent of the testator as to the purpose of the gift. It was to be for the purpose of defraying the "expense of patients received in said hospital under its rules, who are not financially able to pay their bills for such service." The fact that the bequest was to the hospital by its common name and not in the name of the legal entity, which is designated by law to hold the legal title to the property of the hospital, cannot be permitted to frustrate the humane intention of the testator and destroy the validity of such a charitable gift. *Craig* v. *Secrist* (1876), 54 Ind. 419; *Skinner* v. *Harrison Township* (1888), 116 Ind. 139, 18 N. E. 529; *In re McDoles Estate* (1932), 215 Cal. 328, 10 Pac. (2d) 75; *Milligan* v. *Greeneville College* (1927), 156 Tenn. 495, 2 S. W. (2d) 90; *In Re Estate of Moeller* (1926), 199 Cal. 705, 251 Pac. 311. In the latter case a charitable bequest in favor of "Mountmellick Union Workhouse" was held to be a valid gift to the "legal statutory body having control of and in which is vested the Mountmellick Union Workhouse" the name of which body was the Laioghis Hospital and Homes Committee. The Supreme Court of California therein said:

"While the Mountmellick Union Workhouse is in itself incapable of taking or holding property, as we may assume from the affidavit of Thomas Reilly, it being merely a building and the premises used in connection therewith wherein the inmates are cared for, the appellant, according to said affidavit, is the agency established by the government, whose legal duty it is to direct and carry on the affairs of said workhouse and to have charge and dominion over its property. As such, there is no question but that it would be the proper and legal body to receive said bequest. The mere fact that the testatrix made the bequest in favor of the workhouse and not in favor of the committee legally in charge of said institution should not defeat said bequest."

Nor is the gift herein to the hospital invalid because of indefiniteness in the type and class of beneficiaries to be benefited. The gift was for the purpose of helping patients "received in said hospital under its rules" who were not financially able to pay. The class of beneficiaries may, therefore, be ascertained from the rules of the hospital and from the statute. § 22-3229, Burns' 1933, § 4527 Baldwin's 1934. This makes the class sufficiently certain and it is not necessary to designate the individual beneficiaries other than as belonging to such class. 10 Am. Jur. 647.

Appellants also contend that the gift to the Church was void because the will failed to provide the amount which the testator desired the trustees to expend on chimes, the particular kind of chimes to purchase, and the method in which the remainder of the fund was to be expended for the benefit of the people of Crawfordsville and Montgomery County, Indiana. The gift was primarily to the "First Methodist Church of Crawfordsville, Indiana," of which the testator had been a member for more than sixty years. By his gift of one-half of the remainder of his estate to the Church he demonstrated his belief in the work of the Church and also his belief in the sound judgment of its governing body. His expressed desire that a portion of the gift be expended in the installation of chimes on the church property and that the balance be expended in a manner to be selected by the governing body of the church as being most beneficial to the people of the community, did not invalidate the gift by making it too indefinite. The gift was for the improvement of the church property and the extension of its program in such manner as would, in the opinion of its governing board, be most beneficial to the residents of that community. A gift to a church without

any directions as to how it should be spent is valid, because it carries with it the implied provision that it be spent for the purposes for which the church was organized and is being maintained. The work of churches is generally accepted as being beneficial to the people of the community in which the church is located. The provision that the governing body of the church should choose the particular method of using the fund which, in their opinion, would be most beneficial to the community would certainly not authorize the use of the fund, as contended by the appellants, in any private enterprise, nor make the purpose of the gift so uncertain as to invalidate it. *Mackenzie* v. *Presbytery of Jersey City* (1905), 67 N. J. Eq. 652, 61 Atl. 1027; *McAlister* v. *Burgess* (1895), 161 Mass. 269, 37 N. E. 173.

Appellants have devoted much space in their briefs to the discussion of the doctrine of *cy pres* and insist that the entire doctrine has been repudiated by this court. In so far as this case is concerned, a construction of the will which gives the widow a life estate with a limited power of disposition and upholds the two gifts to the hospital and the church is amply supported by authorities in this state, which declare that gifts to charitable uses should be highly favored and construed by the most liberal judicial rules that the nature of each case will permit, in order to accomplish the result intended by the testator and prevent the gift from failing. *Dykeman* v. *Jenkines, supra; Richards* v. *Wilson* (1916), 185 Ind. 335, 392, 112 N. E. 780. The doctrine of *cy pres,* as applied in the United States, is the doctrine of approximation. 10 Am. Jur. 676. To this extent our courts have certainly applied the doctrine in the interpretation and construction of charitable gifts. In *Richards* v. *Wilson, supra,* p. 393

this court said, under the application of the judicial *cy pres* doctrine,

> "The courts are required to look beyond the institution, or trustee, particularly designated to administer the property given and the particular manner in which it is to be administered, to those for whose benefit it is to be administered. And if it appears that the latter were the real objects of the donor's bounty, the trust will survive the failure of the particular trustee and the particular method of administering the trust if the court can secure a trustee to carry into effect as near as may be the dominant purpose of the donor. And so in many cases it has been held that, notwithstanding the corporation to which the gift was to go and by whom it was to be administered was not incorporated or would not or could not administer the trust, nevertheless, the trust did not fail, but only the machinery for carrying it into effect, and that in such cases the court would supply not only the trustee but devise a mode of administration akin to that intended. 5 R. C. L. 364, and cases there cited; . . . "

Appellants insist that this doctrine as applied by the courts of this state will not make an invalid trust valid. This is true, but the doctrine is recognized by our courts in determining whether a charitable trust is valid.

Having decided that the charitable gifts to the hospital and the church, of that part of the estate of the testator which remained undisposed of at the death of the widow, were valid, we must next determine what part, if any, of his said estate was disposed of by her pursuant to the power of disposition granted to her by the will.

On June 15, 1937, the said Sarah E. Durham made her last will and testament by the terms of which will she disposed of the bulk of the property which she owned personally, and also provided for various bequests "out of funds from the estate

of my late husband, George T. Durham." Her will also contained a devise to The Crawfordsville Trust Company of Crawfordsville, Indiana, in trust, of all of the farm lands "from the estate of my late husband . . . owned by him and by his mother and father." The next to the last paragraph of her will was as follows:

"Item 34. Wherever in this will I have indicated a bequest or devise or provision to be from the funds or property accruing from the will or estate of my late husband, George T. Durham, I have and do hereby appropriate such property and funds to myself and to my use, and do hereby give and dispose of it as my property. I know this was the intent and desire of my husband. I may while living by other conveyances transfer the properties and funds herein willed direct to my trustee or to the beneficiaries intended; but if so, this will shall supplement any such gift or disposal, and my expressed desires herein as to the control and management of trusts and benevolences will guide the trustee and management of the trusts and properties."

The will of George T. Durham provided that whatever part of his estate remained undisposed of at the death of his wife "shall not descend to her heirs, nor under any will of hers." This provision would seem to clearly preclude her from disposing of any of his property by will. Her life estate in the property terminated at her death and her power of disposition was expressly limited to dispositions other than by her will. Appellants contend that the true construction of this restrictive provision is that none of his property shall pass to her heirs either by descent or by will, and that there was, therefore, nothing to prevent her from passing title by her will to anyone other than to her heirs. With this interpretation we cannot agree. The two ideas, connected by the disjunctive *nor* were correctly construed by the trial court as preventing her from dis-

posing of any of her husband's property to anyone by her will. Nor could this provision of her husband's will be evaded by the statement in her will that she had and did thereby appropriate to herself and to her own use the property in question. The husband's will gave her the title and use of property only for life. The power of disposition could not possibly be interpreted as authorizing her to appropriate to herself additional title in order to authorize her to pass such appropriated additional title by her will.

On July 3, 1937 the said Sarah E. Durham signed, acknowledged and delivered to The Crawfordsville Trust Company of Crawfordsville, Indiana, an instrument in writing denominated a "trust deed." The instrument was also signed and acknowledged by the president and secretary of said trust company. The instrument designated Sarah E. Durham as "donor" and said trust company as "donee." It provided "that said donor, desiring to dedicate certain funds to public usefulness, upon the terms and conditions hereinafter expressed has this day given, and in consideration of the covenants and agreements herein contained, hereby grants, conveys and delivers to said trustee, and its successors, forever, and the said trustee, for itself and its successors, accepts the following real estate situate in Montgomery County, Indiana, securities and property, with proper supplemental transfers where necessary to pass title: . . ." Then follows a description of all of the real estate which the donor owned, and also all of the real estate owned by her husband, George T. Durham, at the time of his death, expressly reserving in the donor, however, a life estate in her home property located in the city of Crawfordsville, Indiana. Included in the description of the property transferred was the following:

"also, Eighty Thousand Dollars ($80,000.00) of funds now in the possession of Elston Bank & Trust Company, of Crawfordsville, Indiana, executor of the last will of George T. Durham, deceased, as assets of the estate of said George T. Durham, separate assignment and gift of which is made simultaneously herewith, under the power and authority given said donor under the will of said George T. Durham, her late husband."

The instrument then provides that the trustee shall manage and control all of the farm land so conveyed, collecting all the income therefrom and paying all proper charges and expenses incident thereto, "and during the life of said donor pay her the net income, rents, dividends and profits from said real estate and personal property, quarterly, on the first days of January, April, July and October."

Said instrument further provides that within one year from the death of the donor the donee, as trustee, shall convey certain of said real estate, which was ·owned by the husband, to the city of Crawfordsville, Indiana, to be used and maintained by said city as "Durham Park" and if such conveyance is accepted by said city the trustee shall pay to said city, quarterly, the net income from $40,000.00, of the amount of the personal property therein transferred, for the maintenance, upkeep and improvement of said park; that in the event of the refusal of said city to accept such gift then the trustee is authorized and directed to sell said real estate and add the proceeds of such sale to the principal of the sum transferred by said instrument to said trustee for the maintenance of the home thereinafter provided; and that, after the death of the donor, her home shall be converted into and "maintained as a home for needy persons of Crawfordsville, Indiana, of the Caucasian race, to be selected by Mary Walter Wilson and Anna Roundtree, or the survivor of them";

and that said "home to be maintained out of the funds derived from the income, dividends, rents and profits from the real and personal property herein conveyed, as herein provided."

On the same day, that is on July 3, 1937, the said Sarah E. Durham signed and gave into the possession of said Crawfordsville Trust Company a written assignment which its secretary presented in duplicate to an officer of the executor of the will of George T. Durham; that the officer of said executor trust company endorsed on a copy of said assignment: "July 8, 1937, Received the original of this instrument, Elston Bank & Trust Company, Will L. Stump, Vice-President."

Said written assignment was as follows:

"To Elston Bank & Trust Company, Executor of the Last Will of George T. Durham, Deceased:

"In consideration of the provisions and conditions contained in a trust deed to real and personal property, simultaneously executed by me to The Crawfordsville Trust Company, Crawfordsville, Indiana, and under and by virtue of the power and authority vested in me under the terms and conditions of the will of said George T. Durham, deceased, my late husband, I hereby assign, transfer, and deliver to The Crawfordsville Trust Company, Trustee, all my right, title and interest in and to eighty thousand dollars ($80,000.00) of United States Treasury Bonds, par value, of the $200,000.00 of such bonds held by said Elston Bank & Trust Company, as executor of the last will of George T. Durham, deceased, also all live stock and personal property of every kind and character situated and kept on all of the real estate owned by said decedent in his lifetime, and which was inventoried by said executor as a part of the assets of the estate of said decedent, reserving to myself the income therefrom during my life, and said Elston Bank & Trust Company is hereby authorized, directed and empowered to transfer and deliver said $80,000.00 of said bonds and all of said personal property above described to The Craw-

fordsville Trust Company, Crawfordsville, Indi-. ana.

"Witness my hand and seal this 3rd. day of July, ' 1937.

(Signed) Sarah E. Durham."

Otherwise than by this written assignment the said Sarah E. Durham did not demand or ask said executor to turn over or surrender to her, or to any one else, any of the assets of the estate of George T. Durham, and the executor did not surrender or deliver to her, nor to any one else at her direction, the possession of any of the registered United States Treasury Bonds, or any other personal property or assets which belonged to her husband's estate, except the sum of $1,725.00 which it paid to her as net income which accrued from said estate during her life.

The $200,000.00 par value of the United States Treasury Bonds mentioned in said assignment consisted of two bonds, each of the face value of $100,000.00, which were registered in the name of and as the property of George T. Durham and which continued to be so registered until after the death of Sarah E. Durham. The live stock and personal property situated and kept on all the real estate owned by said Durham in his lifetime, as mentioned in said assignment, consisted of animals, implements, tools, crops and other personal assets of said testator, of which the Crawfordsville Trust Company had charge and possession, as the agent of the executor. None of the bonds or other personal property which had been owned by George T. Durham during his lifetime was in the possession of Sarah E. Durham on July 3, 1937, nor at any time thereafter, but all thereof was at all times in the possession of the executor. The actual possession of said bonds and other personal property was never delivered to the

Crawfordsville Trust Company, donee under said instrument, by Sarah E. Durham nor any one on her behalf.

The court below found that "each bequest, assignment or transfer by Sarah E. Durham of title to any of said assets of the estate of George T. Durham and all thereof were executed and intended by her to be by way of bequest, devise and gift to a trustee or trustees in trust for the uses specified as above set out."

The appellants contend that by both the trust deed and the assignment Sarah E. Durham exercised her power of disposition as authorized by her husband's will and, therefore, made a valid transfer of title of the property therein described to The Crawfordsville Trust Company, as trustee, for the purposes described in said trust deed.

The appellees apparently concede that under the terms of the last will and testament of George T. Durham, the power of disposition therein given to his wife authorized her to make a charitable gift, of any part of the assets of his estate to a trustee. Nor do they question the fact that she provided in the trust deed that she should be paid the net income from the property during life. They do, however, insist that by the trust deed she conveyed only a life interest which she owned in the assets of the husband's estate, and did not exercise her power to dispose of the fee in such assets. It is contended that the words "hereby gives, grants, conveys and delivers" amount to no more than a quitclaim deed, and that a quitclaim deed operates only to transfer the present interest of the grantor. While it is true that a quitclaim deed does not pass any after acquired property by estoppel, and that it has often been stated in such cases that a deed with no covenants of warranty conveys only such title as the grantor then has, it surely would not be seriously con-

tended that one who has a power of disposition of the fee could not validly exercise the power by means of any deed sufficient to convey the fee if the intention to so exercise the power clearly appears in the deed.

The case of *Frazier* v. *Hassey* (1873), 43 Ind. 310, is cited in support of the rule that where a person holds both an interest and a power in the same property and does some act with reference to the property without a particular reference to the power, such act will be construed as affecting the interest and not the power. The case cited recognizes the fact that this rule applies only where "the act be indifferent." The rule is not applicable if the intention to exercise the power be apparent.

The fact that there was no consideration paid for the trust deed is stressed as a fact to be used in determining the question of intention. In the case of a sale of the land the amount of the consideration would be important in determining whether the grantor intended to exercise a power by conveying the fee. However, where, as here, the grantor has the power to make a gift and the entire instrument shows that a gift is intended, there is, naturally, no consideration and that fact cannot have any bearing on the estate intended to be conveyed.

It is well settled that the instrument executing the power need not specifically refer to the power provided the instrument shows an intent to execute such power. The intent need not be shown in any particular way, but is to be determined by a construction of the whole instrument, with reference to the circumstances under which it was executed. *Bullerdick* v. *Wright* (1897), 148 Ind. 477, 47 N. E. 931; *South* v. *South* (1883), 91 Ind. 221.

When we examine the trust deed executed by Sarah E. Durham, we are compelled to conclude that it was her intention to exercise the power and convey the fee in the real estate which had been owned by her husband. The conveyance was "to said trustee, and its successors, *forever*." One provision thereof provided that within one year after her death the trustee should convey a portion (fifty acres) of the real estate, which had belonged to her husband, to the city of Crawfordsville to be used and maintained as a public park and that after her death the trustee should pay, quarterly, to said city the net income "from $40,000.00 of the amount of personal property herein transferred to said donee, for the maintenance, upkeep and improvement of said park." The trust deed also provided for the establishment and permanent maintenance of "a home for needy persons of Crawfordsville, Indiana, of the Caucasian race . . . said home to be maintained out of the funds derived from the income, dividends, rents and profits from the real and personal property herein conveyed." The only property owned in fee by the grantor and included in said trust deed was the house where the home was to be located, one hundred sixty acres of farm land and an undivided one-third interest in eighty acres of farm land, all in Montgomery County. It follows that the net income from her real estate could not possibly cover the expense of the operation and maintenance of such a home and the dominant purpose of the entire trust would necessarily fail if the operation of the deed were limited, as appellees suggest, to the property which she owned absolutely and to her life estate in the lands of her husband. The execution of the trust deed which provided for the payment of the net income to her during her life, was futile if she only intended to convey

her life estate to the trustee. The courts, where possible, construe instruments so as to make them operative and effective.

The trust deed and assignment were executed for the same purpose, on the same day, as a part of the same transaction, and must therefore, be construed together. In the trust deed $80,000.00 of funds in the possession of the executor of the last will and testament of her husband as assets of his estate were included in the description of the property which the grantor "hereby grants, conveys and delivers to said trustee, and its successors, forever." Said trust deed also states that as to said funds, "separate assignment and gift" thereof "is made simultaneously herewith, under the power and authority given said donor under the will of said George T. Durham, her late husband." In the assignment she also states that the assignment is made "under and by virtue of the power and authority" vested in her under said will. In the assignment she described the interest she was thereby assigning and transferring as "all my right, title and interest in and to" said personal property. The appellees insist that by these terms of the assignment she was assigning only her life estate in the personal property because that was all the interest she had. When all of the terms of and circumstances surrounding the two instruments are considered together, however, we must hold that as to the personal property she was also intending to exercise her power to give the absolute property therein to said trustee. This is clearly shown by the direct reference to the power and by the use which the trustee was directed to make of this property.

Appellees also contend that, since she was never in possession of said personal property, she could not and

did not make such a delivery thereof as to make said gift valid. Actual physical delivery of the object of the gift is not required. The delivery may be either actual, constructive or symbolical. *Richards* v. *Wilson, supra,* recognized that such gift might be made by deed without delivery. 24 Am. Jur. 750. We see no good reason why such a gift without actual delivery should not be held valid when made by a formal written assignment. The reason for requiring delivery is that actual delivery takes the thing given out of the possession of the donor and, therefore, places it beyond the power of his revocation. A written assignment, such as we have here, which makes a present gift of personal property which is in the possession of a third person, which assignment is delivered to the assignee and notice thereof given to the one in possession, makes a valid completed gift which the donor cannot revoke. Such a written assignment, therefore, takes the place of delivery. *Ross, Exr.,* v. *Watkins* (1923), 80 Ind. App. 487. A different case is presented where the owner makes an order on, or even delivers an assignment to his agent who never completes the gift. If an agent fails to take an essential step, it is the same as if the owner stopped short of completion and, of course, makes the gift invalid. In the instant case the husband's executor stood in the place of a third person in possession. If the gift was completed by the delivery of the written assignment to the trustee and its acceptance by the trustee, the refusal of the executor to deliver possssion could not affect it. Neither actual possession of the property nor legal title was necessary to her power of disposition. *Ross, Exr.,* v. *Watkins, supra.*

The appellees insist that the executor was under a statutory duty to sell all of the personal property. The testator by his will directed that the property █ be sold after the death of the wife. The necessary implication from this provision is that the executor not sell the personalty prior to the death of the wife and that the wife have the use and power of disposition of the personal property in its present form rather than in the proceeds from the sale of such property. There is nothing in the will of the testator nor in the law which postpones the exercise of her power of disposition to the time when the estate is settled and property delivered to her.

We, therefore, hold that by the said trust deed and by the written assignment, the said Sarah E. Durham intended to and did convey and transfer to said trustee the absolute title to all of the property, both real and personal, in said two instruments described, including the real and personal property which belonged to George T. Durham at the time of his death and which was described in said two instruments, all to be held in trust by said trustee for the uses and purposes as in said trust deed provided, and we further hold that such disposition of said property was a valid exercise of the power of disposition which she held under the last will and testament of the said George T. Durham.

The judgment is reversed with instructions to restate the conclusions of law in conformity with this opinion and enter judgment not inconsistent therewith.

NOTE: Reported in 25 N. E. (2d) 626.